CLABAUGH ET AL. *v.* HARRIS ET AL.

[Cite as Clabaugh v. Harris (1971), 27 Ohio Misc. 153.]

(No. 243579—Decided March 4, 1971.)

Common Pleas Court of Franklin County.

*Mr. Robert R. Shaw,* for plaintiffs.
*Mr. Thomas E. Palmer,* for defendant B. G. Davis, Inc. et al.
*Mr. Charles R. Andrews,* for defendant Harris.

WILLIAMS, J.   Plaintiffs have filed a complaint for injunction, temporary and permanent, to restrain and enjoin each of said defendants from continuing trucking activities during the hours of the late night season and early morning. The motion for consolidation of the hearing on the preliminary injunction with the trial on the merits was granted.

The evidence and testimony have disclosed that the plaintiffs are residents of a farm community, some of whom have lived on their farms from thirty to fifty years; that they are the owners of their properties; that the defendant Davis, is a general contractor on Project 614, Franklin County I-70, which includes the relocating of U.

S. Route 33 in the Grandview Heights area; that the defendant, Bellevue Trucking Company, is a subcontractor to truck gravel from the Franklin Gravel Pit, 5500 Lockbourne Road to the project.

The evidence further disclosed that weather permitting, the defendants pursuant to the contract haul in large gravel trucks on two ten-hour schedules or twenty hours per day, full loads of gravel on the roads where some plaintiffs reside and return empty on roads where other plaintiffs reside; that the operation of the trucks produces high extreme of noise and vibration to the windows, weather stripping and buildings of the plaintiffs; that the noise, particularly in the late hours of the night season and early morning hours prevents and disrupts the sleep of the residents of the community.

The quantity of fill material to be hauled exceeds one million cubic yards. This fill must be completed in June of this year. Due to the quantities involved, a large number of trucks must work two shifts, one at night and one in the early morning, to complete the job within the schedule spelled out by the State of Ohio Department of Highways and the city of Columbus.

Because of heavy traffic conditions on Route 33, near the terminus of the haul, no hauling is done between 4:00 p. m. and 7:00 p. m. Also, no hauling is done on Saturdays and Sundays. On a twenty hour per day basis, 73 working days are required to complete this phase of the work. Based on a five day work week, it could be completed no sooner than June 8, 1971, which immediately puts the contract behind schedule.

To switch to two shifts of eight hours each would cost defendants an additional $202,000.00, and would be virtually impossible because of the traffic conditions on Route 33 during the early evening hours.

The project itself is a result of the federal legislation concerning the so-called "Inter-State Highway" system, and is, in effect, a combined effort of the national, state and local levels of government. There is little doubt that such a system is necessary and everyone enjoys the benefits

therefrom to a greater or lesser degree, depending upon his use of the finished product.

The situation here presented was not the result of neglect, delay or wrongdoing on the part of the defendants, but rather on the part of the various levels of government. The enabling legislation, at all levels, could very well have spelled out working restrictions with regard to working hours, etc. But it did not. Rather it would appear that such time schedules have been forced upon the defendants in this matter as to require their working in the present manner.

The question therefore, is whether the conduct of the defendants in the operation of the trucks, in compliance with a contract with the state of Ohio, constitutes a nuisance and health hazard to the residents of the community to a degree that said residents are entitled to temporary relief from said truck operation.

The rule of equity to entitle a party to injunctive relief requires that his rights must be clear; the nuisance must be clearly established; the legal rights of the complaining party must be shown to have been affected by the nuisance to a substantial degree; and the injury alleged must be irreparable.

Nuisance is a difficult concept to define. It cannot be defined so that a standard rule will fit all cases. 41 Ohio Jurisprudence 2d 98, Sec. 9, et seq. For the very concept of a "nuisance" requires a definition which is responsive to many circumstances.

It is important to examine the distinction between what the law labels as *public* and *private* nuisances. Plaintiffs, to properly invoke the jurisdiction of this court, must establish that the problem in question is a *private nuisance*.

If a whole neighborhood or any considerable number of persons are annoyed, it is a *public nuisance*. 41 Ohio Jurisprudence 2d 93, Sec. 4; *Cardington* v. *Fredericks*, 46 Ohio St. 442. In general, the law is very clear that private individuals have no right to abate, by injunction, a public nuisance. 41 Ohio Jurisprudence 2d 142, Sec. 54. Such an injunction can only be obtained if their injury is differ-

156

ent in kind and degree from that of the general public. *State, ex rel. Anderson, v. Preston* (1963), 2 Ohio App. 2d 244. In *Richards v. Washington Terminal Co.* (1914), 233 U. S. 546, the United States Supreme Court held that plaintiff, like all other property owners along a railroad right-of-way, was required to bear without redress the amount of noise, vibration and smoke incident to the running of the trains. Similarly, the Supreme Court of Ohio denied recovery with respect to the noise, smoke, vapor, and other discomfort arising from the ordinary use of a railroad. The court noted that "the occupant and owner of a lot and dwelling house adjoining the right-of-way has no more right to recover damages of the company than any citizen who resides or may have occasion to pass so near the railroad as to be subjected to like discomfort." *Parrot v. Cincinnati, H. & D. Ry. Co.* (1858), 10 Ohio St. 64.

In a case involving the attempted enjoining of the operation of trucks and buses on the New York Thruway during nighttime hours, a court found that the plaintiffs had no right to redress. The court noted that the noises emanating from the normal operation of the thruway did not adversely affect the plaintiffs more than any other property owner similarly situated, and that such noises did not subject plaintiffs to a greater share of the common burden of noise cast upon all those living in the vicinity. *Mathewson v. New York State Thruway Authority* (1960), 11 App. Div. 2d 382, 204 N. Y. S. 2d 904, 9 N. Y. 2d 788, 174 N. E. 2d 754 (1961).

In their complaint, plaintiffs do not allege the Franklin Gravel Pit is a nuisance, or even that the operation of the gravel pit *at night* is a nuisance. Rather, liability is asserted solely on the use of trucks running at night on the public highways. It is clear there is no cause of action in such an instance in this state. "The primary and paramount use of highways and streets is for the purpose of travel and transportation, for either business or pleasure * * *." 27 Ohio Jurisprudence 2d, Highways and Streets, Sec. 188. The rule of law on traffic noises has been stated in Ohio by the Court in *Widmer v. Fretti* (1952), 95 Ohio App. 7:

"The evidence is conclusive that vehicular traffic substantially increased during the operation of the gambling club, which traffic increase, plaintiffs say was annoying. However, when a right-of-way has been dedicated or is taken for a highway, *an abutting owner must accept whatever increased volume of traffic results thereon.* Although the purpose of a public highway is for the passage of the public, it may be conceded that land forming such highway was not taken for the purpose of enabling the public to pass over it only in the then known vehicles or for using it in the then known methods for the conveyance of property. [Cite cases.] *Thousands of householders are seriously annoyed by the juggernauts of modern transportation, but have no right at law or in equity to abate the traffic or obtain damage resulting from such increased use of the highway.*" (Emphasis added.)

Similarly, in *Minquadale Civic Association* v. *Kline* (Del. Ch. Ct. 1965), 212 A. 2d 811, the plaintiffs claimed that defendant's business activities on the street constituted a nuisance, such vehicles being the alleged source of excessive vibration, noise and noxious odors. The court denied relief, noting that "In this age of the motor vehicles powered by oil or gasoline, noise and exhaust fumes must be passively tolerated in most areas."

It is a complete defense to any charge of public nuisance for defendants to prove that their activities are being conducted under authority of the state. 41 Ohio Jurisprudence 2d 110, Sec. 161. As is stated in 43 American Jurisprudence, Public Works and Contracts, Sec. 83:

"As a general rule, a private contractor in the construction of a public improvement under a contract with duly authorized public authorities is not liable for any injury, direct or consequential, to owners of private property that may result as a necessary incident from the prosecution of the work in a proper manner, which would otherwise amount to a nuisance. The theory is that one who contracts with a public body for the performance of public work is entitled to share the immunity of the public body from liability for incidental injuries necessarily involved in the performance of the contract, where he is not guilty of neg-

ligence. In other words, when the act or failure to act which causes an injury is one which the contractor was employed to do and the injury results not from a negligent manner of doing the work, but from the performance thereof, the contractor is entitled to share the immunity from liability which the public enjoys * * *."

Clearly, this "defense" to a charge of creating a nuisance is applicable to this public project—the construction of an interstate highway system.

Ohio has recognized this rule of law in prior cases involving garbage or sewage disposal. Of course, the building of a public highway is a similarly necessary duty of government.

Regardless of the classifications of nuisances and "defenses" thereto, it is well established in this country that a public highway contractor is not accountable to private parties for damages caused to them in the construction of a highway, unless those damages were caused by the contractor's negligence. A common law nuisance, standing by itself, is not such a tort.

The U. S. Supreme Court, long ago, set forth the principles which defeat the plaintiffs herein. In *Northern Transportation Co.* v. *Chicago*, 99 U. S. 635, 640, 25 L. Ed. 336, where blasting had disrupted plaintiffs in the enjoyment of their property while a tunnel was being built and the city was the contractor for the state, the court said:

"* * * in working this improvement of which the plaintiffs complain, the city was the agent of the state, and performing a public duty imposed upon it by the legislature; and that persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted * * *. The doctrine, however it may appear at times to be a variance with natural justice, rests upon the soundest legal reason. The state holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it."

The principle was perhaps better stated by the Supreme Court of Minnesota in the case of *Nelson* v. *McKenzie-Hague Co.*, 192 Minn. 180, 97 A. L. R. 196, where in the performance of its contract, the contractor-defendant had found it necessary "* * * to blast solid rock and use pile drivers and noise-making machinery." There was no claim of negligence, but only one of nuisance, as in the within case. The court said, in part:

"As a practical matter and inescapably, almost every large public work must necessarily be done in a manner to create a nuisance * * *, where persons happen to reside close to the work. There is constant noise of heavy machinery * * *. If perchance conditions require work to go on in the nighttime, as they did here, the annoyance is greatly aggravated and in a non-legal sense, but a very real sense, much of a nuisance.

"* * * If the private nuisance statute is applicable to such situations, * * * every public work would be subject to injunction, which would result in great inconvenience and expense to the public at large * * *."

In denying the plaintiffs' right to complain of the nuisance, the court ruled:

"This is no case of mere legal authorization by the state. Our highways are built by the state itself, in its capacity as a sovereign * * *. Once (the highway department) * * * has contracted for their construction, it is the legal duty of the contractor to perform his contract. Such a contract makes the contractor the agent of the state and clothes him with something more than mere authority to proceed. It puts upon him the legal duty to do so. How then, so long as he is guilty of no negligence or trespass, does he commit a legal wrong in performing, in the only way it can be performed, the affirmative duty he owes the state?"

Finally, in determining irreparable injury, the court must weigh all the equities in the case. To grant an injunction in this matter would affect not only the parties, but would inconvenience the millions of people who will use the highway upon its completion.

160

Deeply sympathetic though the court may be with the plight of the plaintiffs, an injunction cannot be granted. Our legislative bodies, at all levels, have instituted a "crash program" of highway building. This is clearly within their province so to do. It is not within the province of the court to, in effect, deny this right.

It is best summarized in 29 Ohio Jurisprudence 2d 18, Sec. 15, as follows:

"Caution in granting injunctions is especially required in cases affecting a public interest as, for example, where the court is urged to interfere with or suspend the operation of important public works, * * *."

Therefore, the requests for injunction, both preliminary and permanent, are denied at plaintiffs' costs.

*Judgment accordingly.*