CITIZENS TO PROTECT THE ENVIRONMENT, INC. ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* UNIVERSAL DISPOSAL, INC. ET AL., APPELLEES AND CROSS-APPELLANTS.

(Nos. 87AP-815, 87AP-816, 87AP-817, 87AP-818, 87AP-819, 87AP-820 and 87AP-821—Decided November 29, 1988.)

*Brent L. English,* for appellants and cross-appellees.

*Thomas P. Michael,* for appellee and cross-appellant Universal Disposal, Inc.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Lauren Palik Alterman,* for appellee and cross-appellant Director of the Ohio Environmental Protection Agency.

STRAUSBAUGH, J. These appellate cases represent several appeals and cross-appeals from the Ohio Environmental Board of Review. At issue is the order of the Environmental Board of Review affirming a decision of the Director of the Ohio Environmental Protection Agency to deny an application for a permit to install a sanitary landfill in Middlefield Township, Geauga County, Ohio.

Appellee and cross-appellant, Universal Disposal, Inc. ("Universal"), has been in the refuse disposal and septic tank business since 1961 with its primary business being the disposal of residential and commercial wastes. Although a substantial portion of its business is located in Geauga County, Universal was unable to dispose of refuse in that county because of the absence of licensed sanitary landfills. Accordingly, Universal proposed to establish a sanitary landfill site on a one-hundred-six-acre parcel located in Middlefield Township in rural Geauga County.

Middlefield Township contains a sizeable Amish community and several residential developments. Both the Amish and occupants of the residential developments live in close proximity to the proposed site. Additionally, a small stream and its tributary traverse the one-hundred-six-acre parcel from the north to the south.

Universal, on October 15, 1981, filed an application with the Ohio Environmental Protection Agency ("EPA") seeking a permit to operate a sanitary landfill on the proposed site. The application was subsequently amended, on June 15, 1982, to exclude from the plans submitted by Universal one portion of the site from active land-filling. Thereafter, on January 7, 1983, appellee, Richard L. Shank, Director of the EPA ("director"), issued a proposed denial of the permit application. Universal then appealed the proposed denial pursuant to R.C. 3745.07. At that point, appellants-

intervenors ("appellants") moved to intervene pursuant to Ohio Adm. Code 3745-47-15. Appellants include both "citizen intervenors" and "government intervenors." The citizen intervenors are composed of a nonprofit membership corporation known as Citizens to Protect the Environment, Inc., and a number of individuals who live in the vicinity of the proposed landfill. The government intervenors include the Board of Commissioners of Geauga County, the Geauga County Board of Health, and the Middlefield Township Board of Trustees. Appellants' motion to intervene was granted on June 2, 1983 and an adjudication hearing was held before a hearing examiner of the EPA in September and November 1983.

The hearing examiner, on February 12, 1986, issued a report and recommendation to the director that the permit application be denied. The hearing examiner found first that the establishment of the proposed landfill would not create a nuisance, contrary to the director's initial finding. However, the hearing examiner also found that the proposed landfill operator, appellee and cross-appellant William Clemson, was not competent or qualified to operate the landfill in accordance with statutory and regulatory requirements. The hearing examiner found further that appellees failed to demonstrate that the proposed landfill would not be located in a floodway or regulatory floodplain, that Universal failed to establish the landfill would not pollute surface or groundwaters and that the landfill would be within five feet of the existing high ground water table. Both Universal and appellants filed objections to the report and recommendation of the hearing examiner, which objections were overruled by the director on July 28, 1986, who issued a final order denying the application.

Universal filed an appeal, and appellants filed a cross-appeal, to the Ohio Environmental Board of Review ("board"). Following oral argument, the board upheld the director's decision to deny the permit on July 30, 1987. Specifically, the board affirmed the director's findings that the proposed landfill was located in a floodway or in a regulatory floodplain, that the proposed landfill would contravene Ohio Adm. Code 3745-27-06(I)(6) and (7) regarding the location of landfills in relation to the groundwater table and that Universal had failed to demonstrate that the landfill would not pollute surface or groundwaters in the area. The board also affirmed the finding of the director that the proposed landfill would not constitute a nuisance and that Universal had substantially complied with the requirements of Ohio Adm. Code 3745-27-06(H)(2). However, the board reversed the finding of the director that the proposed operator was incompetent to operate the landfill.

Subsequently, the parties filed several appeals and cross-appeals in this court pursuant to R.C. 3745.06. Specifically, appellants contest the finding of the board that the proposed landfill would not constitute a nuisance, that Universal had substantially complied with Ohio Adm. Code 3745-27-06(H)(2) and the determination that the proposed operator was competent to operate the landfill. The director has filed a cross-appeal regarding this latter issue concerning the proposed operator's competence to run the landfill. Finally, Universal has filed a cross-appeal regarding all of the issues affirmed by the board, with the exception of the findings regarding the competency of the proposed operator and whether the landfill constituted a nuisance. This court has consolidated these appeals. The errors asserted are:

Appellants' Assignments of Error:

"I. The Environmental Board of

Review committed reversible error by failing to reverse the Director of Environmental Protection's erroneous conclusion that the proposed landfill would not cause or contribute to a nuisance in violation of O.A.C. § 3745-27-06(H).

"II. There is no authority under Chapter 3745 of the Ohio Administrative Code to issue a permit to install a sanitary landfill where the applicant has previously violated either the statutory or administrative requirements applicable to solid waste disposal facilities.

"III. The EBR improperly substituted its judgment for that of the director in reaching the conclusion that the competency regulation found in Section 3745-27-06(H)(3) of the Ohio Administrative Code was arbitrary and subjective and that the director's conclusion that the proposed operator of the landfull was neither competent nor qualified was unreasonable and unlawful."

Director's Cross-Assignment of Error:

"The director's interpretation of O.A.C. 3745-27-06(H)(3) was reasonable and lawful in finding that the proposed operator was not presently competent or qualified to operate the proposed landfill."

Appellees' Cross-Assignments of Error:

"1. The EBR erred in finding that the proposed landfill is located in a floodway or in a regulatory floodplain outside a floodway.

"2. The EBR erred in finding that the proposed landfill requires waivers from the groundwater table regulations set forth at OAC Rule 3745-27-06(I)(6) and (7).

"3. The EBR's determination that applicant has failed to demonstrate that establishment and operation of the proposed landfill will not cause pollution of surface water and ground waters is not based upon a valid factual foundation and is unreasonable and unlawful."

Although three parties have filed appeals in this case, the only true appellant is Universal since the permit application was ultimately denied. The appeals by the intervenors and by the director relate solely to certain findings made by the board but do not contest its final order.

Under its initial cross-assignment of error, Universal advances two arguments. First, Universal maintains that the board's finding that the proposed landfill was located in a floodway or regulatory floodplain is based upon incompetent evidence. Second, Universal contends that the definition of "floodway" cannot be expanded by the director absent compliance with R.C. 119.03.

In support of the first contention, Universal argues the board's finding regarding the location of the floodway was premised entirely upon the testimony of Dr. Vincent Ricca. Universal maintains that Dr. Ricca's testimony was incompetent because it was purely speculative as to the location of the floodway and as to whether the landfill would be subject to flooding in the event of a one-hundred-year flood. As such, Universal argues that the board erred in upholding the director's determination as reasonable and unlawful.

The board may vacate or modify an action by the director only if the action was unreasonable or unlawful. R.C. 3745.05. "Unlawful" has been defined as "that which is not in accordance with law" and "[u]nreasonable" "means * * * that which has no factual foundation." *Citizens Committee* v. *Williams* (1977), 56 Ohio App. 2d 61, 70, 10 O.O. 3d 91, 96, 381 N.E. 2d 661, 667.

While the factual foundation for the director's action must be laid by evidence adduced at the hearing, there is no requirement that the evidence

comport with the Ohio Rules of Evidence. Ohio Adm. Code 3745-47-21 (A). The evidence must, however, be probative and relevant. See *Columbia Twp. Trustees* v. *Williams* (Aug. 5, 1976), Franklin App. No. 76AP-107, unreported.

Here, there was competent evidence before the director to support his determination that Universal failed to establish that the landfill was not within a floodway. Specifically, Dr. Ricca testified that the extent of the floodway for the western tributary of the south branch of Phelps Creek was not depicted on the Federal Insurance Administrator ("FIA") map for the area of the landfill. He further opined that if the floodway had stopped north of the landfill, as Universal maintained, the map would have shown the floodway area as fully enclosed by the bold lines used to depict floodways. Since the lines were open, Dr. Ricca believed the floodway extended into the area of the landfill. As such, the director was justified in concluding that Universal failed to establish that the landfill was not in a floodway.

Universal also argues that Dr. Ricca's testimony regarding the height of the one-hundred-year floodwaters for the area surrounding the south branch of Phelps Creek was purely speculative. The basis for this contention was Dr. Ricca's admission on cross-examination that his testimony was based on engineering possibilities rather than probabilities.

Our review of the transcript reveals that the question posed by Universal on cross-examination regarding the certainty of Dr. Ricca's testimony was not so specific as to undermine his testimony regarding the height of the one-hundred-year flood. As such, it is not clear whether Dr. Ricca's response referred to that aspect of his testimony or merely to his testimony regarding runoff of rainwater on the piles.

Even assuming, however, that Dr. Ricca's response referred to all of his testimony, Dr. Ricca also explained on direct examination that his estimates for the level of the one-hundred-year floodway was the result of evaluating the consequences of hydrologic failure. Because Dr. Ricca believed that a hydrologic failure would result in severe environmental consequences, it was his opinion that a one-hundred-percent urbanization factor would be an appropriate component in calculating the height of the one-hundred-year flood. Although Universal contended that the more accurate urbanization factor was on the order of ten percent, Dr. Ricca's use of the one-hundred-percent factor was supported by his testimony regarding the need to use a higher factor based on the location of the proposed landfill.

Similarly, we cannot agree that the director arbitrarily expanded the definition of "floodway" or "regulatory floodplain." The definitions of both terms, set forth in Ohio Adm. Code 3745-27-01(F) and (R), make clear that the terms contemplate the path of floodwaters not only at present but in the future as well. We find no unauthorized rule-making in the director's use of these terms. Universal's first cross-assignment of error is overruled.

As its second cross-assignment of error, Universal contends that the board's finding that the landfill would vary from seasonal groundwater table regulations set forth in Ohio Adm. Code 3745-27-06(I)(6) and (7) is erroneous as a matter of law and unsupported by the evidence. Universal maintains that the definition adopted by the board of "seasonable high ground water table" is contrary to the plain meaning of the term.

Ohio Adm. Code 3745-27-06(I)(6) and (7) provide:

"(I) Except by means of a waiver granted under 3745-27-11, the Direc-

tor shall not approve plans for a sanitary landfill under any of the following conditions:

"* * *

"(6) the seasonal high ground water table and the lowest level of waste materials in the sanitary landfill will be separated by less that [sic] feet of soil of low permeability; or

"(7) the seasonal high ground water table will be less than 5 feet below the existing surface of the site."

While the term "seasonal high ground water table" is not defined, the term "groundwater" "means any water below the surface of the earth in a zone of saturation" and "water table" "means the upper surface of the zone of saturation." Ohio Adm. Code 3745-27-01(G) and (AA). The director found, and the board agreed, that the water level in the eastern portion of the landfill would be within five feet of the base of the landfill. Universal contends that this finding ignores the meaning of a groundwater table, since the evidence showed only perched water sand lenses in this area, which Universal argues is not the same as the groundwater table. In Universal's estimation, the waiver required by Ohio Adm. Code 3745-27-06(I)(6) and (7) is applicable only where the landfill is within five feet of the *regional* groundwater table, which in this case is more than five feet below the site.

We do not agree. Although Dr. Andrew Simon, Universal's hydraulic engineering expert, testified that he believed the regulations were referring to the regional groundwater table rather than perched water sand lenses, the regulations do not support this opinion. The regulations refer only to two types of water: surface water and groundwater. Plainly, the water revealed by boring B-10 is not surface water. See Ohio Adm. Code 3745-27-01(W). Therefore, any water below the surface of the earth is

groundwater, for purposes of the solid waste disposal regulations. As such, it is beyond dispute that a waiver is required for landfills the lowest level of which is planned within five feet of a seasonal high groundwater table, whether that table is a regional water table or merely a perched water sand lens. The second cross-assignment of error is overruled.

Universal finally argues that the board erred in its determination that the proposed landfill posed a threat of water pollution in contravention of Ohio Adm. Code 3745-27-06(H)(1). Universal advances two arguments in favor of this assertion similar to those propounded in its first cross-assignment of error. Specifically, because the board's finding as to surface water contamination is premised upon Dr. Ricca's testimony, Universal contends that this finding is based upon incompetent testimony. Second, Universal argues that the board's findings as to groundwater contamination are against the weight of the evidence.

Since the finding regarding surface water contamination was premised on the location of the proposed landfill in a floodway or regulatory floodplain, there is no merit to Universal's first contention regarding Dr. Ricca's testimony. As we found under the first cross-assignment of error, that testimony was competent.

With respect to the finding that the proposed landfill posed a threat of groundwater contamination, we find no error. Although Universal predicates its manifest weight argument by challenging the "expert" nature of appellants' witness, Dr. Moore, such challenge is without merit. The record reveals that appellants properly qualified Dr. Moore as an expert in the field of hydrogeology, whose testimony was challenged by Universal's expert, Dr. Simon. The hearing officer was free,

however, to accept or reject the testimony of either expert, in whole or in part. As such, the testimony of Dr. Moore was sufficient to enable the hearing officer to conclude that the proposed landfill posed a threat of contamination to the groundwater in contravention of Ohio Adm. Code 3745-27-06(H)(1).

This court also notes that the hearing officer did not find the landfill would pollute the groundwater, but rather found that Universal failed to establish that the landfill would not cause water pollution. The hearing officer simply concluded that Universal failed to adequately rebut Dr. Moore's testimony regarding the long-term instability of the soil at the base of the landfill. Dr. Moore's testimony fully supports this conclusion. The third cross-assignment of error is overruled.

Turning to appellants' appeals, under the first assignment of error appellants attack the finding of the board that the proposed landfill would not create a nuisance on two bases. First, appellants contend that to the extent a landfill fails to comply with the various provisions of Ohio Adm. Code 3745-27-06 regarding water pollution or floodplain location, such landfill constitutes a nuisance *per se*. However, because this formulation of the term "nuisance" was not advanced before either the board or the director, this court will not pass on that issue.

Appellants also contend, however, that the evidence regarding the aesthetic and social consequences of the proposed landfill was so overwhelming that the board was required to conclude the landfill would be a nuisance.

Although there is no statutory definition of "nuisance," the director has defined that term to mean "anything which is injurious to human health or offensive to the senses; interferes with the comfortable enjoy-

ment of life or property; and affects a community, neighborhood, or any considerable number of persons (although the extent of annoyance or damage inflicted upon individual persons may be unequal)." Ohio Adm. Code 3745-27-01 (N). We believe the proposed landfill does not constitute a "nuisance" as defined. There was substantial evidence to support the board's conclusions with respect to the three principal aesthetic factors which appellants contend create a nuisance: litter, odor and noise.

As the hearing officer noted, the litter-control methods described by Universal's design engineer, Mr. Hovancsek, complied with the standard set forth in Ohio Adm. Code 3745-27-08(F). A scientist with, and the section chief for, the Divisions of Hazardous Materials Management and Land Pollution Control both indicated that the proposed landfill would pose no substantial nuisance in the form of odor or noise if properly operated. Although four residents of the area near the proposed site testified that the odor or noise would seriously offend their senses and would interfere with their enjoyment of life and property, the testimony of the EPA witnesses indicates that these adverse effects would not be experienced by a large number of persons.

Appellants argue that because the landfill would significantly increase truck traffic on State Route 528, which borders the western boundary of the proposed site, such increase in vehicular flow constitutes a nuisance given the rural nature of the road and the number of horse-drawn vehicles which traverse the road. The board and the hearing officer concluded this increase in truck traffic would not constitute a nuisance, while acknowledging that the increase in traffic would likely increase the threat of physical harm to the occupants of the horse-

drawn vehicles. The basis for this conclusion was *Clabaugh* v. *Harris* (1971), 27 Ohio Misc. 153, 56 O.O. 2d 407, 273 N.E. 2d 923.

*Clabaugh* stands for the proposition that private parties may not seek to enjoin or abate a public nuisance unless the injury to the complaining party is different from that suffered by the public at large. *Id.* at 155-156, 56 O.O. 2d at 408, 273 N.E. 2d at 925. A public nuisance exists where a neighborhood or any considerable number of persons are annoyed. *Id.* at 155, 56 O.O. 2d at 408, 273 N.E. 2d at 925. We find that the board and the hearing examiner erroneously relied on *Clabaugh.* Although it may well be that appellants would have no *cause of action* in nuisance because of the increased truck traffic, they nevertheless may prove a nuisance under the *Administrative Code* if the increased traffic meets the three factors specified in Ohio Adm. Code 3745-27-01(N). More precisely, the Administrative Code defines "nuisance" to include a "public nuisance," which *Clabaugh* held was not actionable. As such, the board erred in relying on *Clabaugh* in determining that no nuisance was presented by the increased truck traffic.

Despite this error, appellants can demonstrate no prejudice since the application was denied in any event. Therefore, although the board's reliance on *Clabaugh* was erroneous, there is no reason to send this issue back to the board for resolution of whether the increased truck traffic posed a nuisance under Ohio Adm. Code 3745-27-01(N).

As their last contention, appellants argue that the hearing examiner erred in excluding expert testimony regarding the adverse impact the landfill would have on the Amish community. Although their argument is not entirely clear, appellants appear to contend that this testimony was relevant to the issue of nuisance, regardless of the director's discretion to consider such information under the provisions of Ohio Adm. Code 3745-31-05(B) pertaining to socio-economic factors.

We find no error. Even if it be conceded that adverse socio-economic factors constitute a nuisance pursuant to Ohio Adm. Code 3745-27-01(N), it nevertheless is clear that the director is not required to consider such factors. *Rings* v. *Nichols* (1983), 13 Ohio App. 3d 257, 260, 13 OBR 320, 323, 468 N.E. 2d 1123, 1127. As such, to the extent the director excludes evidence regarding socio-economic factors, such exclusion cannot be a predicate for error before this court.

Based on the foregoing, appellants' first assignment of error is overruled.

As their second assignment of error, appellants maintain that Ohio Adm. Code 3745-27-06(H)(2) precludes the issuance of a permit to install a sanitary landfill to any applicant who has previously violated the statutory or administrative requirements relative to solid waste disposal facilities. It is appellants' position that this prohibition is an absolute bar to future licensing, regardless of the facts which gave rise to the violations. Since the evidence established four separate prior violations, appellants argue that the board abused its discretion when it approved the director's finding that these violations did not bar issuance of the permit.

This court has previously stated that:

"Ohio Adm. Code 3745-27-06(H)(2) should be applied by the Director of the Ohio Environmental Protection Agency on a case-by-case basis and the director has some discretion to grant a permit to an applicant who has previously operated a solid waste disposal facility where said applicant

acted reasonably to prevent and eliminate conditions of nuisance that were created by the landfill he formerly operated." *Independence* v. *Maynard* (1985), 25 Ohio App. 3d 20, 25 OBR 92, 495 N.E. 2d 444, paragraph three of the syllabus.

In other words, to the extent an applicant has acted reasonably with respect to prior violations, such violations are not an absolute bar to future licensing.

Here, the director determined, and the board agreed, that the prior violations were the result of Universal's confusion over the statutory and regulatory requirements. This finding is supported by reliable, probative and substantial evidence. Nevertheless, merely because Universal was confused as to who was required to obtain a permit is not dispositive of whether Universal acted reasonably in taking corrective action once informed of the regulatory and statutory violations. Since this is a factual question to be resolved in the first instance by the director and the board, remand would be in order. However, because the application has been denied, the board's failure to apply the correct legal standard is nonprejudicial to appellants. The second assignment of error is overruled.

Finally, appellants and the director contend that the board erred in reversing the director's conclusion that the proposed operator was not competent or qualified to operate the landfill. Both parties argue that the board was required to affirm the director's determination since there was evidence to support his conclusion and because the regulations require that the operator be *presently* competent.

Ohio Adm. Code 3745-27-06(H)(3) states:

"(H) The Director shall not approve any detail plans, specifications, and information unless he determines that:

"* * *

"(3) the person identified as the operator of the solid waste disposal facility is competent and qualified to operate the solid waste disposal facility in accordance with ORC Chap. 3734 and these Chapters, 3745-27 and 3745-37[.]"

In the instant cause, the director determined that the proposed operator, Bill Clemson, was not competent or qualified to run the landfill because he was not an experienced landfill operator. The board did not conclude, contrary to the assertions of the director and appellants, that Clemson met the requirements of Ohio Adm. Code 3745-27-06(H)(3) because he would gain the appropriate experience after a year on the job. Rather, the board found that the director's conclusion was subjective and ad hoc and, therefore, unreasonable and unlawful due to "the absence of standards defining operator competency or established, objective criteria relating to competency and qualifications * * *." EBR No. 281452, etc., Findings of Fact, Conclusions of Law and Final Order, Finding No. 51, at 12.

For the reasons which follow, we find the board erred in reversing the decision of the director. Although the terms "competent" or "qualified" are not specifically defined by the Administrative Code, this court cannot agree with the board that the terms are so vague as to have no objective meaning. First, the context in which the terms are employed suggests certain objective standards. That is, the operator must demonstrate familiarity with R.C. Chapter 3734 and Ohio Adm. Code Chapters 3745-27 and 3745-37. Second, Ohio Adm. Code 3745-27-08 and 3745-27-09 set forth specific requirements for the operation of landfills, including a thorough familiarity

with the lawful operation of the specific landfill under consideration and the plans, specifications and information for that landfill. Ohio Adm. Code 3745-27-08(N). Thus, the Administrative Code identifies standards and objective criteria by which to judge the competency of a proposed operator. While the director may develop more specific criteria or require an examination, he is not required to do so given these minimum standards.

This is not to suggest, however, that merely because the proposed operator meets these minimum standards the director is required to find the operator competent or qualified. Ohio Adm. Code 3745-27-06(H)(3) contemplates that the director have some latitude in this regard. Given the many variables that govern the location, operation and closure of a landfill, it is not unreasonable for the director to exercise discretion in assessing the competency or qualifications of a proposed operator for a specific landfill. As such, we fail to perceive how the director abused his discretion in requiring Clemson to demonstrate proficiency in the operation of the proposed landfill in order to qualify as competent or qualified. Although experience is not the *sine qua non* of competency in every case, experience may be a factor to be considered in making this determination on a case-by-case basis.

Here, the evidence indicates that the site for the proposed landfill was geographically quite narrow in relation to other landfills, that the site was divided into two rectangular noncontiguous parcels separated by a flood-prone stream, that the hydrogeology and hydraulics of the site presented numerous technological problems and that the location was of great concern to nearby residents. Under these circumstances it was not unreasonable for the director to require that the proposed operator be competent by way of experience, in addition to meeting the other requirements of the Administrative Code. Accordingly, the board erred in reversing the director's findings on this issue. Appellants' third assignment of error and the director's sole cross-assignment of error are well-taken and are sustained.

Based on the foregoing, the third assignment of error and the cross-assignment of error of the director are sustained. The remaining assignments of error, and cross-assignments of error of Universal, are overruled. The order of the board is, therefore, affirmed in part and reversed in part. Upon remand, the board is instructed to affirm the order of the director in its entirety.

*Order affirmed in part,*
*reversed in part and*
*cause remanded with instructions.*

BOWMAN and BROGAN, JJ., concur.

JAMES A. BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.