MILLER et al., Appellees,

v.

CITY OF WEST CARROLLTON et al., Appellants.

[Cite as *Miller v. W. Carrollton* (1993), 91 Ohio App.3d 291.]

Court of Appeals of Ohio,
Montgomery County.

No. 13578.

Decided Oct. 27, 1993.

*John R. Koverman, Jr.,* for appellees.

*Robert F. Cowdrey,* for appellant city of West Carrollton.

*G. Jack Davis, Jr.,* for appellants Woody's Market, Inc. and Woodrow W. Bowman.

---

BROGAN, Judge.

This litigation began in May 1990 when the appellees, Mary Lois Miller and James Street, filed a complaint in the Common Pleas Court of Montgomery County seeking to enjoin the appellants, Woody's Market, Inc. and Woodrow Bowman, from building a car wash upon the right-of-way of Alexandersville Road and Alex Circle (a.k.a. Zapp Road) in the city of West Carrollton. The city was also joined as a defendant.

After the issues were joined, the trial court found that Alex Court (a.k.a. Alex Circle) was a private street and that Alexandersville Road had been properly vacated by West Carrollton. The trial court further found that the building permit issued by West Carrollton to Woody's Market for the construction of the car wash was proper and did not violate any zoning ordinances.

Miller and Street appealed the trial court's judgment and this court reversed the judgment of the trial court and found that West Carrollton had created a common-law dedication of Alex Circle to public use. This court also found that the vacation of Alexandersville Road was not proper, as Miller and Street were abutting landowners who were not notified of the vacation proceedings. Finally, we found that the building permit issued to Woody's Market permitted it to construct the car wash on the vacated portion of Alexandersville Road and to within two feet of Alex Circle. We found that "resolution of further issues concerning the building permit and zoning regulations will require findings by the trial court" and we remanded the matter for resolution of those issues. *Miller v. Carrollton* (Aug. 27, 1991), Montgomery App. No. CA 12606, unreported, 1991 WL 228711. No appeal was taken from our judgment.

On June 30, 1992, the trial court held that the building conditional use permits issued by the city to Woody's Market for the construction of the car wash were void. The court also ordered that those portions of the car wash constructed on and over the rights-of-way of Alex Circle and Alexandersville Road and those portions constructed within ten feet of the rights-of-way of said streets be removed immediately. The trial court also ordered that the defendants take such action as was necessary to bring Alex Circle into conformance with the city's street requirements and to restore the paved portions of Alexandersville Road which were removed to build the car wash. Both the city and Woody's Market appealed the trial court's judgment.

■ Both appellants assert that the trial court erred in determining the boundaries of the right-of-way of Zapp Avenue, a.k.a. Alex Circle.

" 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276.

Meryl Neyman, a retired Service Director of West Carrollton, testified that the city maintained the paved portions of Alex Circle and a gravel berm and ditch area on each side as part of the right-of-way. He also testified that in 1971 the city required appellee James Street to improve the berm and ditch area south of the paved portion of Alex Circle and next to his property with curb, gutter, storm sewer, sidewalk and a tree lawn. The improved portion of the right-of-way that Street was required to improve was fifteen feet in width. Neyman also testified that the berm and ditch area on the north side of the paved portion of Alex Circle were the same as the south sides.

At the evidentiary hearing of January 7, 1992, George Stephenson, a licensed surveyor, testified concerning the dimensions of the Alex Circle right-of-way. Stephenson testified that his findings were based upon his visual observations, his field surveying, and a review of the testimony of Meryl Neyman.

Stephenson testified that he determined the location of the paved portion of Alex Circle before the work was done by Bowman by actual field location or observation. One frame of reference was the location of a stop sign on the right-of-way at the intersection of Alex Road and Alex Circle. He testified that the fifteen-foot rights-of-way from the edges of the paved portion of the road were consistent with the common fifty-foot rights-of-way.

Stephenson prepared a legal description of the Alex Circle right-of-way and a map which demonstrated that the car wash bay was well inside the right-of-way and beyond the building setback line established by the city ordinance. The map also clearly indicates the car wash equipment room was built on Alexandersville Road beyond the building setback line. The evidence presented was sufficient to establish the location of the Alex Circle right-of-way. The appellants' first assignment is overruled.

In their second assignment, the appellants contend the trial court erred in ordering the removal of the car wash from the rights-of-way of Alex Circle and Alexandersville Road in circumstances where there was no evidence of special damage.

The appellants contend the trial court erred in ordering the removal of the portions of the car wash intruding on the rights-of-way because the appellees failed to demonstrate to the trial court how they would be "especially" damaged

by the presence of the car wash on the rights-of-way as is required by R.C. 713.13 and Section 154.14(C) of the West Carrollton zoning regulations.

The appellants argue that before the trial court could issue an injunction to tear down parts of the car wash building it was required to balance the equities and determine whether the injury involved in ordering the partial destruction of the building far exceeds any injury to the appellees by the continued presence of the car wash in the rights-of-way.

The appellants argue that the evidence demonstrates that the portion of Alexandersville Road north of Alex Circle was not extensively used by anyone after that road was barricaded in the 1970s and that Alex Circle is wider after completion of the car wash project than before and it has not created any impediment to the ingress to and egress from Miller's property. Appellants also argue that the evidence demonstrated that the only inconvenience to Street's property occasioned by the presence of the car wash was when semitrailers parked along Alex Circle interfered with trucks which were pulling out of his business. Appellants also point out that Street acknowledged that if traffic were regulated along Alex Circle there probably would be no problem with congestion.

The appellees argue, on the other hand, that they were not required to demonstrate "special" damage in order to obtain injunctive relief because Section 154.14(C) provides that any neighboring property owner "damaged" by a zoning violation may institute an injunctive action.

Appellees argue that they both demonstrated that their property values had been diminished by the presence of the car wash on the rights-of-way. Appellee Street points out that he testified that on four or five occasions during the summer of 1991 truck activity at the wash facility blocked Alex Circle.

Last, appellees argue that even if they must demonstrate special damage, a neighboring property owner would be especially damaged by the construction of a car wash and there is no authority to apply a balancing of injuries test in a statutory injunction action to enforce regulatory laws.

■ While a private nuisance action is maintainable by a private citizen, the general rule is that a private individual lacks standing to maintain a private action for a public nuisance. Prosser, Private Action for Public Nuisance (1966), 52 Va.L.Rev. 997, 999.

■ A private plaintiff may fall within the exception to the general rule by proving that he has suffered some special injury or particular damage not incurred by the public generally. While authorities are in disagreement as to what constitutes a special injury, the majority view regards the special injury as an injury suffered by the plaintiff which is different in kind rather than degree

from that suffered by other members of the public exercising the same public right. Prosser, *supra,* fn. 6, Section 88 at 587. See, also, 72 Ohio Jurisprudence 3d (1987), at 441, 442; and *Clabaugh v. Harris* (1971), 27 Ohio Misc. 153, 56 O.O.2d 407, 273 N.E.2d 923.

R.C. 713.13 provides that a neighboring property owner who is "especially damaged" by a building erected in violation of a zoning regulation may institute a suit for injunction to prevent or terminate the violation. A plaintiff who exercises a public right extraordinarily more than the general public has a special reason for doing so and that reason invariably amounts to a different kind of interest in the public right, the injury of which satisfies the special injury rule. When a public nuisance interferes with the use and enjoyment of a plaintiff's land, he has sustained a special injury and he may proceed under a private nuisance action. Environmental Law—The Nuances of Nuisance in a Private Action to Control Air Pollution (1978), 80 W.Va.L.Rev. 48, at 54, 55.

The determination that the appellees have been especially damaged by the appellants' zoning violation determines the appellees' "standing" to bring an injunction action; it does not resolve the question of whether an injunction should actually be issued by the trial court to remove the offending part of the car wash.

All states hold that a mandatory injunction is a proper remedy for an adjoining landowner to seek for the purpose of compelling the removal of an encroachment. See Annotation, Mandatory injunction to compel removal of Encroachments by adjoining landowner (1953), 28 A.L.R.2d 679, at 686.

The extraordinary nature of the remedy by injunction calls for a particular application of equitable principles, and it may be said to be the duty of the court to consider and weigh the relative conveniences and comparative injuries to the parties which would result from the granting or refusal of injunctive relief. Because of the drastic character of mandatory injunctions, such rules apply with special force to them.

When the court is thus asked to undo something that has been done, it must, for obvious reasons, act in a careful and conservative manner and grant the relief only in situations which so clearly call for it as to make its refusal work a real and serious hardship and injustice.

The facts which will warrant mandatory relief must be clear, be free from reasonable doubt, and disclose the prospect of irreparable injury to the complainant. Equity will not interfere where the anticipated injury is doubtful or speculative; reasonable probability of irreparable injury must be shown. Such relief will be refused where the injury is so slight as to bring the case within the maxim "de minimis non curat lex," where there is no appreciable damage, where

a mandatory decree would require a difficult and expensive act, or where its enforcement would necessitate close and continuous supervision by the court for an indefinite period. As in other cases of injunction, the court will balance the equities between the parties and consider the benefit to the plaintiff of a mandatory writ as against the inconvenience and damage to the defendant, and award relief accordingly.

Although particular regard should be given to the public interest, "the grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." *Weinberger v. Romero–Barcelo* (1982), 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91, 99.

In *Sautto v. Edenboro Apts., Inc.* (1964), 84 N.J.Super. 461, 202 A.2d 466. The trial court entered an order in favor of plaintiffs, adjoining landowners, the effect of which was to compel the total or substantial demolition of defendant's high rise apartment building. The building was in violation of the side-yard requirements in a municipal zoning ordinance. On appeal, the decree was reversed. The appellate court appeared to be influenced by the fact that the defendant proceeded to build in reliance upon a building permit that local authorities had represented to be valid notwithstanding changes in the local zoning law. However, the relative hardship doctrine seemed to be persuasive in the court's decision to reverse the grant of injunctive relief. The court said: "We are convinced that the economic waste which would be entailed in the destruction of such an edifice, valued by the FHA at approximately $850,000, cannot be justified and is an impelling reason for judicial consideration of the consequent relative hardship and the prevailing equities between the parties." *Id.* at 477, 202 A.2d at 474.

In *Arnold v. Melani* (1969), 75 Wash.2d 143, 449 P.2d 800, the Supreme Court of Washington upheld the denial of a mandatory injunction for the removal of an encroaching structure on the property of a neighboring landowner. The court stated at 152–153, 449 P.2d at 806:

"As thus construed, * * * *Peoples Sav. Bank v. Bufford* [ (1916), 90 Wash. 204, 155 P. 1068], *supra,* and *Tyree v. Gosa* [ (1941), 11 Wash.2d 572, 119 P.2d 926], *supra,* support the premise that a mandatory injunction can be withheld as oppressive when, as here, it appears (and we particularly stress), that: (1) The encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

"Ordinarily, even though it is extraordinary relief, a mandatory injunction will issue to compel the removal of an encroaching structure. However, it is not to be issued as a matter of course. We do not deny that a 'sacred' right exists in a free society as to the protection of the concept of private property; we simply hold that when an equitable power of the court is invoked, to enforce a right, the court must grant equity in a meaningful manner, not blindly. * * * However, in that the relief granted by the denial of the injunction affects a landowner's possessory rights, as do laches and estoppel, and is exceptional relief for the exceptional case, we further require (as was present in this case) that the evidence of the elements listed above be clearly and convincingly proven by the encroacher.

"In prior cases the relief herein afforded has been somewhat incorrectly referred to as a 'balancing of equities.' This doctrine is rather the judicial recognition of a circumstance in which one party uses a legal right to gain purchase of an equitable club to be used as a weapon of oppression rather than in defense of a right. It is a contradiction of terms to adhere to a rule which requires a court of equity to act oppressively or inequitably and by rote rather than through reason. See *Golden Press Inc. v. Rylands,* 124 Colo. 122, 235 P.2d 592, 28 A.L.R.2d 672 (1951)."

Professor Van Hecke explored the factors involved in injunctions to remove or remodel a structure in violation of building restrictions. See 32 Tex.L.Rev. 521. Among the factors involved in the forty-two denials of injunctions to remove the structures were the defendant's good faith. The defendant was found to have acted in good faith where his violation of the restrictions had not been willful but the result of accident or mistake, without undue haste and without actual knowledge of the restriction. Frequently, good faith was predicated upon reliance of advice of counsel, on the affirmative actions of city and zoning authorities. *Id.* at 524, 525.

Most frequently and significantly relied upon as an affirmative basis for injunction was the defendant's willfulness. The cases abound with such appraisals as "deliberate," "defiant," "flagrant," "intentional," "premeditated," and "at his peril." The cases unanimously refused to put relative hardship into the reckoning in cases where the defendant had acted willfully, and the hardship likely to result if injunction were granted was of his own making. A Massachusetts court noted, "Entrenchment behind considerable expenditures of money cannot shield premeditated efforts to evade or circumvent legal obligations from the salutary remedies of equity." *Stewart v. Finklestone* (1910), 206 Mass. 28, 38, 92 N.E. 37, 40.

■ Mary Lois Miller testified she has lived on Alexandersville Road just south of Alex Circle since 1941. She testified that West Carrollton barricaded Alexandersville Road so that she could not get onto Dixie Highway from

Alexandersville Road and that her only access to Alexandersville Road was by travelling down Zapp Road a.k.a. Alex Circle.

Miller testified that she presently has no difficulty obtaining access from her property across the newly created Alex Circle which is now wider than the road which existed prior to the construction of the car wash.

James Street testified he operates Radar Security on the property just south of Alex Circle. He testified the construction of the car wash interferes with the use of his property because on occasion semitrailers and school buses are parked on Alex Circle blocking access to his business parking lot.

Street was asked by counsel for West Carrollton whether he would have any real complaint with the location of the car wash "if traffic along Alex Circle was regulated and the City did not permit either a school bus or a semitrailer to park along there and you're required to enter the actual car wash area?" Street stated he would be satisfied with such an arrangement if the police enforced the no-parking requirement on Alex Circle.

David Humphreys, Director of Planning and Economic Development of West Carrollton, testified that Alex Circle was always considered to be a private street on the records of the city. He testified the city granted the necessary permits for the construction of the car wash on the assumption that Alex Circle was a private street and, at the time the car wash was constructed, the car wash building met all zoning and building code requirements. Humphreys acknowledged he received a copy of the letter from the appellees' attorney dated April 26, 1990 in which counsel requested that all construction on the car wash building be discontinued because it was being built on a public street.

Humphreys stated he discussed the matter with Woodrow Bowman and later with the city manager and the city attorney and it remained their collective opinion that Alex Circle was a private street and that the relevant portion of Alexandersville Road adjacent to the car wash had been properly vacated. It is undisputed that at the time the appellees raised an objection to the construction of the car wash, construction had not gone beyond the pouring of the "footers" for the building and some lock work.

Humphreys also testified that although Alex Circle was considered to be a private street, the city required Woody's Market to give them a thirty-three-foot easement for the construction of a suitable access road in the unvacated portion of Alexandersville Road. There was no evidence that Woody's Market built the car wash in defiance of zoning and building restrictions.

Daniel Bowman testified that the car wash project cost approximately two million dollars to construct. He also testified that the building along Alex Circle cost approximately $140,000 to construct and it would cost $35,000 to remove that

part of the car wash. He said the wash equipment on the "vacated" portion of Alexandersville Road is the "brains" of the car wash project and removal of this part of the car wash building would effectively destroy the project.

Long ago, the Ohio Supreme Court in *Goodall v. Crofton* (1877), 33 Ohio St. 271, reiterated the well-recognized principle of equity that when a party who complains that a business, lawful *per se,* is a nuisance that affects his property injuriously by the reason of the manner the business is conducted has an adequate remedy in an action for damages, he must establish his right for relief at law before equity will interfere by injunction.

As a result of our determination that Alex Circle is a common-law dedicated street and the vacation of Alexandersville Road was improper, the car wash project is presently in violation of the building and zoning requirements of West Carrollton.

Appellee Miller admits that access to her property now proceeds over a road wider than the previous road. She admits she does not use the portion of Alexandersville Road on which the car wash abuts. She believes that her property has been damaged by the presence of the car wash, but she admitted she did not have her property appraised for determination of any specific loss in value.

Appellee Street has demonstrated sufficient evidence to demonstrate standing to bring the injunction action. He has failed to demonstrate that he is entitled to have the offending parts of the car wash torn down because of the damages he alleges he suffers by its presence. The damage that the appellant will suffer by such a remedy far exceeds that of the damages suffered by Street and Street's damages are not irreparable.

This court has the authority to modify the mandatory injunction ordered by the trial court. West Carrollton as a party to this action has, through its counsel, proposed a reasonable solution to the inconvenience caused Street's business by the presence of semitrailers and school buses on the newly created Alex Circle. Therefore, West Carrollton shall regulate vehicle traffic on Alex Circle by prohibiting any parking or vehicle "standing" on that street. This modification of the trial court's mandatory injunction should resolve the inconvenience or injury to Street's business located on his property.

Street is also entitled to a hearing to determine what damages, if any, are appropriate to award him for the inconvenience his business has suffered to this point by the erection of the car wash in violation of building and zoning regulations. Miller is also entitled to a hearing to determine what damages, if any, the presence of the car wash has caused her property. The appellants' second assignment in this respect is sustained.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

GRADY, P.J., and FREDERICK N. YOUNG, J., concur.