[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
This case is before the court upon a summary judgment motion filed by defendants Ronald J. Burnard and Patsy Burnard ("the Burnards"). Upon consideration of the pleadings, the summary judgment evidence, the written, arguments of counsel, and the applicable law, I find that the motion should be granted.
 I.
The plaintiff, Kathleen Hamburger, and the Burnards own adjacent property in Springfield Township, Ohio on which they have newly constructed homes. The parties' homes are located in a subdivision known as Stone Oak Country Club Plat Six ("Stone Oak"), which was developed by Cavalear Properties Limited Partnership ("Cavalear"). As homeowners in Stone Oak, the parties are subject to Cavalear's Declaration of Rights and Restrictions ("the declarations.")
In 1996, when the Burnards built their house, they located their dwelling on their lot in such a mariner that one portion of their house was only ten feet from Ms. Hamburger's lot line. Section 2.4 of the declarations requires at least a fifteen foot strip of land between a house and the lot line on all four sides of the lot. Because Ms. Hamburger was concerned that the placement of the Burnard house would cause drainage problems on her property, the parties agreed that the Burnards would install a drainage system to alleviate any potential water problems. In exchange for this agreement from the Burnards, Ms. Hamburger agreed not to litigate over the Burnard's deviation from the fifteen foot side lot requirement in the declarations.
In May 1997, the Burnard's began construction of a decorative brick wall-like structure on the side of their property adjacent to Ms. Hamburger's lot. The structure was made of brick matching the Burnards' house and, finished, it supplies a border for shrubs and other plants. The structure is approximately four feet high and twenty-three feet long running perpendicular to the side of the Burnards' home and adjacent to Ms. Hamburger's driveway and garage. Though Ms. Hamburger contacted her attorney during the construction of the structure (and Ms. Hamburger's attorney contacted the Burnards' attorney), construction proceeded rapidly and was completed shortly thereafter. (The parties agree that the structure was substantially completed before May 20, 1997.) The Burnards received approval for the structure from Cavalear on or about May 2, 1997, and they received approval from Springfield Township on or about May 21, 1997.
On June 10, 1997, Ms. Hamburger filed the instant lawsuit seeking injunctive relief. In her complaint, Ms. Hamburger alleges that the structure violates either the declarations or the Springfield Township zoning regulations, and she seeks to have the Burnards permanently enjoined from further violations of the declarations and/or the Springfield Township zoning regulations. She also seeks an order directing the Burnards to remove or relocate the masonry structure in question. The Burnards have moved for summary judgment on Ms. Hamburger's complaint, arguing that the structure violates neither the declarations nor the Springfield Township zoning regulations. Alternatively, the Burnards argue that Ms. Hamburger does not have a private cause of action for their alleged violation of the Springfield Township zoning regulations, that she is not entitled to an injunction, and that her complaint is barred by laches. Ms. Hamburger opposes the motion.
 II.
The general rules governing motions for summary judgment filed pursuant to Civ.R. 56 are well established. In Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66, the Supreme Court of Ohio stated the requirements that must be met before a motion for summary judgment can be granted:
 "The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.
 "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment."
A party who claims to be entitled to summary judgment on the ground that a nonmovant cannot prove its case bears the initial burden of: (1) specifically identifying the basis of its motion, and (2) identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding an essential element of the nonmovant's case. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293; see, also, Dresher,75 Ohio St.3d at 299 (Pfeifer, J., concurring in judgment only). The movant satisfies this burden by calling, attention to some competent summary judgment evidence, of the type listed in Civ.R. 56 (C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. Id. Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56 (E), indicating that a genuine issue of material fact exists for trial. Dresher, 75 Ohio St.3d at 293. Accord Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, 114-115.
The Sixth District Court of Appeals has consistently held that summary judgment should be granted with caution in order to protect the nonmoving party's right to trial. As stated by the court in Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,14-15:
 "We recognize that summary judgment, pursuant to Civ.R. 56, is a salutary procedure in the administration of justice. It is also, however, a procedure which should be used cautiously and with the utmost care so that a litigant's right to a trial, wherein the evidentiary portion of the litigant's case is presented and developed, is not usurped in the presence of conflicting facts and. inferences. * * * It is settled law that '[t)he inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, * * *' which party in the instant case is appellant. * * * It is imperative to remember that the purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist." (Citations omitted.)
 III.
The first issue is whether the Burnards masonry structure violates the declarations. With regard to the parties' lots, Article I, Section 1.15 of the declarations provides, in pertinent part:
 "* * * [N]o fences or fence-type structures shall be permitted * * * except for see through fences (such as split-rail fences) not more than four feet in height, and any fence * * * shall be located not closer than five (5) feet from the rear property line of said residential lot * * *."
The words "fence" and "fence-type structure" are not defined in the declarations.
The Supreme Court of Ohio has held that common words in a written instrument are to be given their plain and ordinary meaning unless such an interpretation would lead to absurdity or unless some other meaning is clearly intended. Alexander v.Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. See, also, Aultman Hospital Assn. v. Community Mut.Ins. (1989), 46 Ohio St.3d 51, 54. The common meaning of "fence" is expressed in Webster's dictionary as:
 "2a: a barrier intended to prevent escape or intrusion or to mark a boundary * * * as: (1): a structure of posts and boards, wire picket or rails commonly used as an enclosure for a field or yard * * *." Webster's Third New International Dictionary (1993) 837.
The masonry structure in question is not commonly known as a "fence" or a "fence-type structure." Accordingly, I find that the structure does not violate the declarations.
The next issue is whether the structure violates the Springfield Township zoning regulations. Ms. Hamburger contends that the structure violates Section 1903, which provides:
 "Cornices, eaves, sills, canopies, window wells, or other similar architectural features (not including vertical projections) may extend or project into the required side yard not more than two (2") inches for each one (1') foot of width of side yard and may extend or project into a required front or rear yard not more than three (3') feet."
The Burnards do not dispute Ms. Hamburger's assertions that the masonry structure in question is approximately 23 feet long and that, where it is situated, it extends to within two feet of Ms. Hamburger's lot line. Therefore, the side lot is approximately 25 feet in that area, and the 23 foot structure appears to violate Section 1903 of the Springfield Township zoning regulations.
R.C. 519.24 provides for a private right of action for violation of a township zoning regulation. That section provides, in pertinent part:
 "In case any building is or is proposed to be located, erected, constructed, reconstructed, enlarged, changed, maintained, or used or any land is or is proposed to be used in violation of sections 519.01 to 519.99, inclusive, of the Revised Code, or of any regulation or provision adopted by any board of township trustees under such section, such board, the prosecuting attorney of the county, the township zoning inspector, or any adjacent or neighboring property owner who would be especially damaged by such violation, in addition to other remedies provided by law, may institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, enjoin, abate, or remove such unlawful location., erection, construction, reconstruction, enlargement, change, maintenance, or use. * * *."
The Burnards contend that this section does not create a private right of action for Ms. Hamburger because it relates only to buildings and use of land and not to structures other than buildings.[1] Ms. Hamburger contends that this reading of the statute is too restrictive, and she points to the syllabi of two Ohio cases that she says provide a more liberal reading of the statute. See Loichot v. Allstate Dev. Corp. (1963), 33 Ohio App.2d 121, paragraph one of the syllabus; Carver v. BuckeyeFireworks Novelty Co. (1985), 24 Ohio App.3d 36, syllabus.
Ms. Hamburger's argument is not well-taken for two reasons. First, both cases that Ms. Hamburger cites are court of appeals decisions. According to the Ohio Supreme Court's Rules for the Reporting of Opinions, the syllabus of a court of appeals case is not a controlling statement of the law. Rule 2 (F) provides:
 "The syllabus of a Court of Appeals opinion shall not be considered the controlling statement of either the point or points of law decided, or law of the case, but rather as a summary for the convenience of the public and the Bar as a research and indexing aid. In a Court of Appeals opinion, the point or points of law decided in the case are contained within the text of the opinion, and are those necessarily arising from the fact, of the specific case before the court for adjudication. * * *."
Reading the Loichot and Carver cases in their entirety reveals that both cases involved buildings, not other structures. Ms. Hamburger has not cited any cases where an action under R.C.519.24 was allowed for structures other than buildings, and independent research has likewise failed to uncover such authority. Since statutes restricting the use of private property must be strictly construed, Whiteco Metrocom, Inc. v. City ofColumbus (1994), 94 Ohio App.3d 185, 190, I find that R.C. 519.24
does not allow for a private cause of action for structures other than buildings.
Even if R.C. 519.24 allowed a private cause of action in this case, Ms. Hamburger only has standing if she can show that she is "especially damaged." See R.C. 519.24; Kroeger v. Standard OilCo. of Ohio, Inc. (Aug. 7, 1989), Clermont App. Nos. CA88-11-086, CA88-11-087, unreported, jurisdictional motion overruled (1989),47 Ohio St.3d 707. Ms. Hamburger claims that she is especially damaged because, during the construction of the masonry structure, the drainage system installed in 1996 was severed. Ms. Hamburger also claims that she has suffered aesthetic damage.
Ms. Hamburger's argument that the structure has caused her aesthetic damage is not well-taken. While individuals may differ about whether the structure is aesthetically pleasing, no reasonable person would find the structure so visually displeasing as to warrant court-ordered removal. As to the claim of water damage, Ms. Hamburger's photographic evidence tends to show that the system was severed during the construction of the Burnards' masonry structure. However, Ms. Hamburger does not argue, and she has not shown, that any drainage problems actually occurred on her property after the construction of the structure was completed. The one picture of water flow onto Ms. Hamburger's property was taken before construction of the drainage system and the masonry structure. I therefore find that Ms. Hamburger has failed to show that she is "especially damaged" by the zoning violation.
Even if Ms. Hamburger was especially damaged, an injunction would not necessarily be appropriate. According to the Montgomery County Court of Appeals,
 "The extraordinary nature of the remedy by injunction calls for a particular application of equitable principles, and it may be said to be the duty of the court to consider and weigh the relative conveniences and comparative injuries to the parties which would result from the granting or refusal of injunctive relief." Miller v. City of West Carrollton (1993), 91 Ohio App.3d 291, 29G, appeal dismissed (1994), 69 Ohio St.3d 1403 (construing R.C. 713.13, which allows a neighboring or adjacent landowner especially damaged by a violation of a municipal zoning ordinance to sue for injunctive relief).
In this case, where the Burnards have all of the necessary approvals from Cavalear and from Springfield Township, it would be inequitable to require them to remove the structure. Weighing the relative conveniences and comparative injuries, equity does not require the injunctive relief Ms. Hamburger seeks.
For all of the foregoing reasons, the Burnards' motion for summary judgment must be granted.
 JUDGMENT ENTRY
There being no genuine issues of material fact, it is ordered that defendants Ronald J. Burnard and Patsy Burnard have summary judgment against plaintiff Kathleen Hamburger. It is further ordered that the plaintiff's complaint is dismissed with prejudice.
 September __, 1998 _________________________________ Frederick H. McDonald, Judge
[1] This section should be compared with R.C. 519.02, which grants townships the authority to regulate zoning matters. That section provides, in pertinent part,
 "For the purpose of promoting the public health, safety, and morals, the board of township trustees may in accordance with a comprehensive plan regulate by resolution the location, height, bulk, number of stories, and size of buildings and other structures
* * *." (Emphasis added.)