OPINION
Defendant-appellant Rite Aid of Ohio, Inc., appeals from a judgment in which the trial court entered a mandatory injunction requiring Rite Aid to demolish one of its pharmacy buildings. The building had been constructed on a portion of shopping center parking lot that was encumbered by a parking easement held by, and for the benefit of, plaintiff-appellee Spring Valley Investments. Rite Aid contends that Spring Valley lacked standing to seek an injunction and that its claims were not ripe for review. Rite Aid further contends that the trial court erred in finding that its building should be demolished.
We conclude that Spring Valley had standing, and that its claim of damage was capable of review. However, we agree that the trial court abused its discretion by granting injunctive relief when there was no showing of irreparable damages.
Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for a hearing on damages, and for any other proceedings that may be necessary or appropriate.
 I
This case arises from the sale of a portion of a parking lot encumbered by a parking easement, and the subsequent obstruction of that easement by the purchaser. The facts relevant to this matter are as follows.
In 1997, Rite Aid purchased a small lot located at the northeast corner of the State Route 48 and Spring Valley Pike intersection. The lot is adjacent to a shopping center, and it is completely bounded on its northern and eastern sides by the shopping center parking lot. The shopping center, which is located on a nine-acre tract of land, consists of the parking lot and a 99,873 square foot building. The shopping center was owned by Spring Valley.
In October of 1982, Spring Valley entered into an "Amended and Restated Easement, Parking and Maintenance Agreement" ("Parking Easement") with its tenant and sub-tenant. The agreement purported to prevent construction of structures or other improvements on the shopping center's parking area. It also granted a non-exclusive parking easement to all the parties. The document also contained the following provision:
 The provisions of this Agreement may be modified, rescinded or amended in whole or in part only with the consent of all the Owners of the Premises and of the then holders of mortgages encumbering the Premises, by declaration in writing, executed and acknowledged by all Owners and said mortgagees and duly recorded in the Recorder's office of Montgomery County, Ohio.
"Owner" is defined in the Parking Easement Agreement as "[t]he person, persons, entity, or entities now or hereafter from time to time holding fee simple title to any portion of the premises * * *."
 The next day, Spring Valley sold the entire property to Dayton-Pittsburgh Associates, subject to all easements and restrictions of record. Concurrent with the sale, Dayton-Pittsburgh Associates leased a portion of the building and grounds to Spring Valley for a term of eighty-five years.[1] The description of the premises demised by the lease included the following pertinent language:
 Said land, building and site improvements, together with and subject to the licenses, rights, privileges and easements appurtenant thereto and such rights established by that Party Wall Agreement * * * and Amended and Restated Cross Easement, Parking and Maintenance Agreement dated as of October 28, 1982, * * * shall be hereinafter collectively referred to as the "demised premises."
In 1997, Dayton-Pittsburgh Associates sold the property to Miami Valley Sports Foundation, Inc. ["the Foundation"] subject to all easements, conditions, restrictions and reservations of record. Thereafter, on March 21, 1997, Rite Aid purchased an L-shaped portion of the parking lot, immediately adjacent to its lot, from the Foundation. Rite Aid and the Foundation also executed a document which purported to rescind the Parking Easement as it applied to the L-shaped portion of the premises. Rite Aid then began construction of a pharmacy upon its original lot and the L-shaped parcel.
On October 7, 1999, Spring Valley brought this action for a preliminary injunction to halt the construction as well as for a mandatory injunction requiring Rite Aid to remove the building. The matter was referred to a magistrate for hearing. Upon motion, the magistrate granted summary judgment in favor of Spring Valley finding that "[Spring Valley had] the right to directly enforce [the] parking easement, that [its] consent was required in order for [Rite Aid] to amend or modify the terms of the easement, and that such consent was not obtained before construction of [Spring Valley's] building".
A hearing was subsequently conducted to determine whether granting injunctive relief was the appropriate remedy. At the hearing, a representative of Spring Valley testified that the partnership was sub-leasing all three of the storeroom areas that it leased from the Foundation; although one lease was set to expire two weeks after the hearing. The representative also testified that Spring Valley had intended to construct, and sub-lease, a new building upon a vacant portion of the leased premises. Spring Valley submitted evidence that it would not be permitted to construct the new building because, due to the destruction of parking spaces by the Rite Aid construction, the shopping center did not have enough parking spaces to meet city code requirements.
Spring Valley also presented the testimony of an expert real estate appraiser, who testified that he had been requested to estimate the impact on Spring Valley's leasehold interest due to the loss of the parking spaces. The appraiser's testimony was predicated upon his finding that if Spring Valley was not able to build the additional structure upon its leased property, the value of its leasehold interest would be diminished by $400,000.
At the conclusion of the hearing, the magistrate entered a decision finding that a mandatory injunction should issue requiring the removal of the structure located in the L-shaped parcel. The decision was premised upon the finding that Spring Valley was irreparably damaged because it would not be able to sub-lease its property or build additional structures because of the decreased number of parking spaces caused by the Rite Aid construction. Rite Aid filed objections to the magistrate's decision. The objections were overruled by the trial court, which adopted the findings of the magistrate. From the judgment of the trial court, Rite Aid appeals.
 II
Rite Aid's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN CONCLUDING THAT SPRING VALLEY WAS AN "OWNER" OF THE PROPERTY IN DISPUTE AND ERRED IN ASSUMING THAT SPRING VALLEY, AS A TENANT-LESSEE, HAD AUTHORITY TO OBJECT TO THE MODIFICATION OF THE EASEMENT AGREEMENT
Rite Aid contends that the trial court erred in finding that Spring Valley had standing to assert rights pursuant to the easement agreement. Rite Aid argues that Spring Valley was not an owner of the premises, and therefore lacked authority to object to the recission of the easement agreement as it pertained to the L-shaped portion of the property.
The easement agreement contains a provision that it can be modified, rescinded or amended only with the consent of the owners of the premises and the holders of mortgages encumbering the premises. Spring Valley sold its ownership interest in the premises to Dayton-Pittsburgh Associates. At issue in this Assignment of Error is whether the lease executed by Spring Valley and Dayton-Pittsburgh Associates conveyed to Spring Valley the right to object to any modification of the easement agreement.
"A lease, like any other contract, must be construed to carry out the intent of the parties." Steiner v. Minkowski (1991),72 Ohio App.3d 754, 759, citation omitted. "If there is a written lease agreement, the intent is determined from a consideration of the written lease as a whole." Id., at 759-760, citation omitted.
In this case, the written lease agreement demised the premises and all easements appurtenant thereto. It also stated that it conveyed "* * * such rights [as] established by * * * [the] Amended and Restated Cross Easement, Parking and Maintenance Agreement * * *".
Had Dayton-Pittsburgh Associates intended to convey only the right to use the easement area, the phrase "together with and subject to the licenses, rights, privileges and easements appurtenant thereto" would have been sufficient to accomplish that goal. However, the lease also included language conveying therights set forth in the easement agreement. Given the use of the additional language of conveyance, we conclude that the owner of the shopping center intended to grant Spring Valley not only the right to use the easement, but also all of the rights set forth in the easement agreement, including the right to object to the modification of the easement.
 Since Dayton-Pittsburgh's conveyance of the shopping center to the Foundation was made "subject to all * * * easements, conditions, restrictions and reservations of record," the Foundation's conveyance to Rite Aid was limited by the rights of Spring Valley. Thus, Spring Valley was entitled to object to any modification of the easement agreement. The Foundation and Rite Aid's purported modification of the easement agreement, without Spring Valley's consent, could not vitiate Spring Valley's rights thereunder. Therefore, the parties breached the easement agreement, and Spring Valley is entitled to seek redress.
The First Assignment of Error is overruled.
 III
For its Second Assignment of Error, Rite Aid asserts the following:
 THE TRIAL COURT ERRED IN CONCLUDING THAT SPRING VALLEY HAD STANDING TO ASSERT THE RIGHTS OF OWNERS OF THE DISPUTED PROPERTY AND THE MORTGAGEES OF IT, AND IN ASSUMING THAT ITS ALLEGED HYPOTHETICAL INJURY WAS RIPE FOR REVIEW.
In this Assignment of Error, Rite Aid contends that Spring Valley's claim of injury was not ripe for review, and that the trial court, thus, erred by permitting it to pursue injunctive relief.
In this case, Spring Valley's claims are that the obstruction of its parking easement: (1) reduced the number of parking spaces available for the shopping center; (2) rendered it unable to sub-lease its storerooms; and (3) prevented it from building new storerooms.
The record does not support the trial court's finding that Spring Valley would be unable to sub-lease its premises because of the loss of the parking spaces. In fact, the record shows that at the time of the hearing Spring Valley was sub-leasing its property.[2] Furthermore, there is no evidence in the record of a shortage of available parking for any customers of Spring Valley's tenants. Therefore, we find Rite Aid's argument regarding these elements of injury to have merit.
We next turn to the trial court's finding that Spring Valley suffered damage because the loss of the parking spaces precluded it from constructing additional storerooms for future rental. There is evidence in the record indicating that as a result of the construction by Rite Aid and the consequent loss of parking spaces, the expansion would not be permitted because Spring Valley would not be able to meet City of Centerville zoning codes regarding parking, due to space constraints.[3] Even though Spring Valley did not have immediate plans to build the storerooms, the testimony of its expert indicated that the loss of its ability to implement the construction resulted in an immediate diminution in the value of its leasehold interest in the amount of $400,000. Therefore, after reviewing the record, we find that the evidence supports the trial court's finding that Spring Valley suffered an immediate injury because of the Rite Aid construction.
The Second Assignment of Error is overruled.
 IV
Rite Aid's Third Assignment of Error states:
 THE TRIAL COURT ERRED IN CONCLUDING THAT SPRING VALLEY WAS ENTITLED TO AN ORDER REQUIRING RITE AID TO DEMOLISH ITS DRUG STORE UNDER THE FIVE-FACTOR BALANCING TEST IDENTIFIED IN MILLER V. CITY OF WEST CARROLLTON
Rite Aid contends that the trial court erred in granting a mandatory injunction requiring it to demolish its pharmacy and to restore the easement area to its original use as a parking lot. In support, it argues that, contrary to the findings of the trial court, the five factors set forth in Miller v. W. Carrollton
(1993), 91 Ohio App.3d 291, do not weigh in favor of injunctive relief.
A mandatory injunction is an extraordinary remedy. State, exrel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141, 153. In order for an injunction to issue, it must be shown that injunctive relief is necessary to protect a clear right from irreparable injury, where any remedy at law is inadequate. 56 Ohio Jurisprudence 3d (1984), Injunctions, Sections 11, 15, 17-18. "The right to an injunction must be clear and the proof thereof clear and convincing * * *." White v. Long (1967), 12 Ohio App.2d 136,140. As noted by this court in Miller, supra, "[e]quity will not interfere where the anticipated injury is doubtful or speculative; reasonable probability of irreparable injury must be shown." Id., at 296-297. Irreparable harm exists when there is a substantial threat of a material injury that cannot be adequately compensated through monetary damages.
 Where an assessment of damages will compensate for the loss suffered from a nuisance, equity will not interfere; and, as a general rule, that mischief or damage which is susceptible of compensation in damages is not irreparable.
Goodall v. Crofton (1877), 33 Ohio St. 271, 276. Although that case proceeded on a claim of nuisance, rather than a claim of breach of a right arising by contract, we find this difference immaterial.
A reviewing court will not reverse a trial court's judgment granting or denying injunctive relief absent an abuse of discretion. Catawba Orchard Beach Assn., Inc. v. Basinger (1996),115 Ohio App.3d 402, 407.
After reviewing the record and applying the above legal principles to the facts of this case, we conclude that the trial court abused its discretion when it determined that Spring Valley is entitled to injunctive relief. The only damage proven on this record is the loss of the ability to build additional storerooms; and Spring Valley admitted, through the testimony of its expert appraiser, that this damage is capable of being quantified in monetary terms. Therefore, the claim that its damages are irreparable — that is, that it has no adequate remedy at law — is without merit.
Given that we have concluded that injunctive relief is not merited, we need not consider Rite Aid's claim that the trial court incorrectly applied the test set forth in Miller, supra.
Rite Aid's Third Assignment of Error is sustained.
 V
Rite Aid's Third Assignment of Error having been sustained, and its First and Second Assignments of Error having been overruled, the judgment of the trial court is Reversed, and this cause is Remanded to the trial court for a hearing on damages, and for any other proceedings, consistent with this opinion, that may be necessary or appropriate.
 ____________________ FAIN, J.
BROGAN and WOLFF, JJ., concur.
[1] The property leased back to Spring Valley consisted of a lease of a portion of the grounds as well as approximately 25,000 square feet of the shopping center building.
[2] The evidence in the record does not indicate that the non-renewal by the sub-tenant whose lease was due to expire two weeks after the hearing was related to the loss of parking spaces.
[3] The evidence in the record suggests that if Spring Valley were to create new parking spaces around the proposed storerooms, it would then be unable to meet City codes regarding set-backs, trash and loading areas.