The STATE ex rel. REICH, Appellant.

v.

CITY OF BEACHWOOD et al., Appellees.

[Cite as *State ex rel. Reich v. Beachwood,* 158 Ohio App.3d 588, 2004-Ohio-5733.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83828.

Decided Oct. 28, 2004.

Kabat, Mielziner & Sobel, Gary B. Kabat, Kevin R. McMillan and Jonathan F. Sobel, for appellant.

Tomino & Latchney, L.L.C., and John D. Latchney, for appellees.

KARPINSKI, Judge.

{¶ 1} Plaintiff-appellant, Molly Reich, appeals from the trial court's grant of summary judgment to defendant-appellee, the city of Beachwood. Reich filed a complaint for a writ of mandamus and an injunction or, in the alternative, damages against the city for its construction of a fire station on city property that abuts her property in her back yard. Constructing this fire station had required

numerous variances from the board of zoning.[1] These variances included reducing the minimum lot size from three acres to 2.04 acres and reducing the distance between the homeowner's lot and the building from 80 feet to 15 feet. The portion of the two-story building overlooking Reich's yard contains the sleeping quarters for the firemen. Reich complains that the building looms over her back yard, rendering it unusable because of the lack of privacy. She argues, therefore, that the city has deprived her of her property.

{¶ 2} There is no evidence that Reich followed the appeals process available to her prior to the building of the fire station. Ordinarily, according to the Beachwood ordinances, she could have objected to the zoning board when the building was being discussed, and she could have appealed to city council when the issue was submitted to it for approval of the variances. She is now, therefore, faced with the completed two-story building abutting her property and overlooking her one-story house.

{¶ 3} Reich demands that the city appropriate her property in its entirety and compensate her for its full value. Reich also argues that the city had a duty to acquire the property through eminent domain. After the court denied Reich's demand by granting summary judgment to the city, Reich appealed, stating one assignment of error:

{¶ 4} "I. The trial court erred in granting appellee's motion for summary judgment."[2]

{¶ 5} The appellate court reviews a summary judgment de novo. *Hillyer v. State Farm Mut. Auto Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. The appropriate test for that review is found in Civ.R. 56(C), which states that summary judgment may be granted under the following conditions: first, there is no genuine issue of material fact that remains to be litigated; second, as a matter of law, the moving party is entitled to judgment; and, third, a review of the evidence shows that reasonable minds can reach only one conclusion, which, when that evidence is viewed most favorably to the party against whom the motion was made, is adverse to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

---

1. Although we do not have certified copies of the zoning board's report, neither side disputes the accuracy of the description of the variances contained in the uncertified copies attached to the city's appellate brief.

2. {¶ a} Reich states two issues under this assignment of error:
 {¶ b} 1) Whether a physical encroachment is necessary before there can be a taking without just compensation and 2) Whether Appellant established a genuine issue of material fact that there had been substantial interference with the elemental rights to her ownership of residential real property in Beachwood?

{¶ 6} Initially, the party who seeks summary judgment has the burden of demonstrating the absence of any issue of material fact for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265. Once the moving party has satisfied that initial burden, however, the nonmoving party then has a similar burden of showing that a genuine issue of fact remains for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–59, 604 N.E.2d 138.

{¶ 7} The right to real property is protected by both the Ohio and the United States Constitutions. "Section 19, Article I of the Ohio Constitution provides that 'private property shall ever be held inviolate, but subservient to the public welfare. * * * [W]here private property shall be taken for public use, a compensation therefor shall first be made in money * * * and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.' Similarly, the Fifth Amendment to the United States Constitution guarantees that private property shall not 'be taken for public use, without just compensation.'" *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 206, 667 N.E.2d 8.

 {¶ 8} To establish a taking, however, the landowner has to demonstrate that the state has caused a substantial or unreasonable interference with his property right. Id.[3] That interference can be either an actual physical taking, as in an appropriation of a strip of land for the widening of a road, or it "may include the deprivation of an intangible interest in the premises." *OTR*, 76 Ohio St.3d at 206, 667 N.E.2d 8.

 {¶ 9} When a property owner is compensated for an appropriation of a portion of his property taken for a public use, "the owner of the property so taken is entitled to be compensated therefor in money. Section 19, Article I, Ohio Constitution. Such compensation includes not only compensation to the landowner for the land actually taken, but, also, damages to the residue of the land of the landowner resulting from the taking and the improvement for which the taking is made." *Columbus v. Farm Bur. Coop. Assn.* (1971), 27 Ohio App.2d 197, 200, 56 O.O.2d 382, 273 N.E.2d 888, citing *Grant v. Hyde Park* (1902), 67 Ohio St. 166, 65 N.E. 891.

 {¶ 10} This compensation for damages is in the form of consequential damages. If, however, none of a property owner's land is taken for public use,

---

3. It is axiomatic that a landowner may institute legal proceedings to force a governmental agency to appropriate land when it has in actuality taken it. *Lucas v. Carney* (1958), 167 Ohio St. 416, 5 O.O.2d 63, 149 N.E.2d 238, syllabus; *Masley v. Lorain* (Jan. 14, 1976), Lorain App. No. 2351.

the owner cannot claim compensation for any diminution in value in his land resulting from a change in abutting land for a public use. *Columbus v. Farm Bur.*, 27 Ohio App.2d at 199, 56 O.O.2d 382, 273 N.E.2d 888.

{¶ 11} "The question of what constitutes a governmental taking without just compensation has been notoriously difficult to define, and in federal constitutional cases the United States Supreme Court has declined to develop a set formula for determining when a particular infringement upon the owner's free use of the property will be characterized as a taking requiring compensation." *Harsh v. Columbus* (Aug. 2, 2001), Franklin App. No. 01AP–54, 2001 WL 868126 at * 3.

■ {¶ 12} Reich is correct in asserting that a taking need not be an actual physical appropriation of the land owner's property; "there need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking." *Smith v. Erie Rd. Co.* (1938), 134 Ohio St. 135, 142, 11 O.O. 571, 16 N.E.2d 310. For example, "compensation has been allowed for loss of riparian rights, for the impairment of the abutting owner's right in the street, which is in the nature of an incorporeal hereditament, for the casting of extraneous and annoying substances on the owner's land and in many other instances; thus it has been firmly established that there may be a recovery not only for a taking altogether but also for a taking *pro tanto*." Id.

{¶ 13} Thus the courts have held that a land owner is entitled to compensation for an appropriation when the property is intermittently flooded because of changes in public use made on another property. *Columbus v. Farm Bur.*, supra, 27 Ohio App.2d 197, 56 O.O.2d 382, 273 N.E.2d 888; *Masley v. Lorain* (Jan. 14, 1976), Lorain App. No. 2351; *Loga v. Strongsville* (Nov. 21, 1985), Cuyahoga App. No. 49776, 1985 WL 8441. Additionally, the loss of a property's access to a public road, even if no driveway or access to that road exists at the time of the change in public use, is considered a loss and a compensable taking. *OTR v. Columbus*, supra, 76 Ohio St.3d 203, 667 N.E.2d 8. Also, the Ohio Supreme Court found a taking when airplanes fly so low over a landowner's property that they "constitute a direct and immediate interference with the enjoyment and use thereof." *State ex rel. Fejes v. Akron* (1966), 5 Ohio St.2d 47, 52, 34 O.O.2d 58, 213 N.E.2d 353. The *Fejes* court declined, however, to "extend the doctrine and implications of that case beyond its particular facts" to include damages to the landowner's property from vibrations from construction machinery engaged in public construction. Id.

■ {¶ 14} Rather, a taking requires a direct encroachment on the land " 'which subjects it to a public use that excludes or restricts the dominion and control of the owner over it.' " *Fejes* at 49, 34 O.O.2d 58, 213 N.E.2d 353, quoting

*Lake Erie & W. Rd. Co. v. Commrs. of Hancock Cty.* (1900), 63 Ohio St. 23, 57 N.E. 1009, paragraph three of the syllabus. The courts have held that many intangible interferences with property do not constitute a taking. For example, an increase in vibration and dust caused by a highway improvement, both from the construction and from the increase in traffic from the expanded highway, is not compensable as a taking. *In re Appropriation of Easements from Leas* (1981), 5 Ohio App.3d 120, 5 OBR 278, 449 N.E.2d 780. The courts have also held that the odor from a sewage treatment plant is not a taking, despite the fact that the odor prevented the property owner from using some of his land for recreational purposes. *McKee v. Akron* (1964), 176 Ohio St. 282, 27 O.O.2d 197, 199 N.E.2d 592. What constitutes an intangible interference has been decided on a case-by-case basis, depending on the specific facts of the case.

{¶ 15} Many of the appropriation cases result from expanding of roads and highways. In a case involving a highway expansion, the Supreme Court of Ohio ruled that a landowner had no right to have her view across the road protected from an embankment resulting from a road expansion. " 'And so the private rights of access, light and air are held and enjoyed subject to the paramount right of the public to use and improve the street for the purposes of a highway. And * * * it follows that, when such uses or improvements are made, no private right is interfered with and consequently no private property is taken.' " *State ex rel. Schiederer v. Preston* (1960), 170 Ohio St. 542, 544, 11 O.O.2d 369, 166 N.E.2d 748, quoting 1 Lewis on Eminent Domain (3 Ed.) 179 et seq., Section 120.

{¶ 16} Similarly here, Reich complains of a large building looming over her yard and of an invasion of privacy because the firemen's sleeping quarters overlook her back yard. In support of her assertion that this constitutes a taking, Reich submitted an affidavit from an expert. Reich's expert concluded that "the location and design of Beachwood's new fire station has adversely affected the livability of the adjacent residence [belonging to Reich] and I would certainly expect its economic viability." He also noted that the location of the fire station "effectively eliminated any sense of privacy for the Reich residence." Id. None of these claimed infringements, however, constitutes a taking under Ohio case law.

{¶ 17} A reduction in economic value for land that has not been appropriated is not compensable as consequential damages; "the fact that property is rendered less desirable as a result of the governmental activity does not in and of itself constitute a taking so as to entitle the owner thereof to compensation." *McKee v. Akron* (1964), 176 Ohio St. 282, 285, 27 O.O.2d 197, 199 N.E.2d 592. Any reduction in her property value, therefore, does not entitle Reich to compensation and does not constitute a taking.

{¶ 18} Reich also claims a change in livability and privacy, but this change also does not constitute a taking. As the *McKee* court held, id. at 286, 27 O.O.2d 197, 199 N.E.2d 592:

{¶ 19} "In the instant case, plaintiff was not displaced from any of her property, the damage was not intentionally directed at her property, and she was not deprived of all or most of her interest in the property as her home was not made uninhabitable as a result of the odor. In substance, plaintiff is claiming that her property is less desirable due to the presence of the sewage disposal plant. Her damage is the same as that which everyone living in the vicinity suffered in varying degrees. Since plaintiff, as a member of the public, shares in the benefits of such governmental activity as sewage disposal, she must also share in its incidental burdens."

{¶ 20} Here, too, Reich was not displaced from her property; she continues to live in her home. The city did not place its fire station in the present location with any intent to injure her. In fact, the city rearranged the floor plan of the building so that the noisiest activities, the servicing of the fire trucks, would be located as far as possible from Reich's home. Although the fire station is closest to her home, the evidence does not show that hers is the only home that looks upon the fire station or the only home within hearing of the sirens. Reich has not shown that the presence of the fire station abutting her property is different in kind rather than degree from its presence near the rest of the landowners in the vicinity.[4]

{¶ 21} As Judge Griffin concluded in his very comprehensive opinion below, because Reich has not shown that the city has "taken" her property, her demands lack merit. "When there is no taking altogether or pro tanto, damages consequential to the taking of other property in the neighborhood, or to the construction of the improvement, are not recoverable; under such circumstances, loss suffered by the owner is *damnum absque injuria.*" *Smith v. Erie Rd. Co.*, 134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310, paragraph two of the syllabus. Reich does not deny that she benefits as much as the rest of the community from the protection the fire station provides. She must, therefore, bear whatever injury

---

4. The damages Reich cites are "consequential." "Consequential damages are generally noncompensable * * *." The Ohio Supreme Court has explained why: " 'Whatever injury is suffered thereby is an injury suffered in common by the entire community; and even though one property owner may suffer in a greater degree than another, nevertheless the injury is not different in kind, and is therefore *damnum absque injuria.*'" *Richley v. Jones* (1974), 38 Ohio St.2d 64, 68–69, 67 O.O.2d 78, 310 N.E.2d 236, quoting *Robert Mitchell Furniture Co. v. C.C.C. & St. Louis R.R. Co.* (1900), 7 Ohio N.P. 639, 1900 WL 1232, affirmed, 65 Ohio St. 571, 63 N.E. 1133, and citing 2 Nichols, Eminent Domain (3 Ed.), Sections 6.38 and 6.4; 2A Nichols, Eminent Domain (3 Ed.), Sections 6.4432 and 6.45; 1 Orgel, Valuation Under Eminent Domain (2 Ed.), Sections 3 and 4.

its presence causes. Because the city's actions in building the fire station next to Reich's home did not constitute a taking, however, the city had no duty to acquire her property by eminent domain.

Judgment affirmed.

JAMES J. SWEENEY, P.J., concurs.

ROCCO, J., dissents.

ROCCO, Judge, dissenting.

{¶ 22} The city of Beachwood's actions in this case do not pass the smell test. The city granted itself massive variances from its own zoning laws in order to build the fire station on this property. Specifically:

- the minimum lot size was reduced from 3 acres to 2.04 acres;
- the front setback was reduced from 75 feet to 69 feet;
- the rear yard requirement was reduced from 80 feet to 15 feet;
- the side yard requirement was reduced from 70 feet to 35 feet;
- the front parking setback requirement was reduced from 75 feet to 53 feet;
- the side parking setback requirement was reduced from 80 feet to 17 feet;
- the parking requirements were reduced from 88 spaces to 42 spaces.

{¶ 23} The enormousness of these variances—particularly those that relate to the side and rear lot requirements affecting plaintiff's adjacent residential property—demonstrates a remarkable indifference to the adjoining property owners and, in my view, amounts to a taking of plaintiff's property.

{¶ 24} In order to obtain these variances, the city was theoretically required to demonstrate that strict enforcement of the zoning laws would impose an unnecessary hardship. The kinds of exceptions the city sought for itself, however, make it as difficult to view them as an effort to avoid the hardship associated with strict enforcement of the zoning laws. More likely, the city was going through the motions in order to give itself special treatment, and, with the city as both applicant and decisionmaker, it would not have been difficult to foresee the outcome. The city chose to turn the hardship requirement on its head and to impose unnecessary hardships on its neighbors in order to squeeze a too-large building onto a too-small lot it happened to own already. This decision smacks of political and financial expediency.

{¶ 25} "Physical displacement is not always necessary" to establish a taking. "A taking may also be found where it is clear that the injury sustained by a person differs substantially in kind from that sustained by others in the neighborhood, even though there has been no physical displacement. Thus a person

might recover by showing that the damage was directed at his particular property or by showing that the damage was so extreme as to amount to a substantial deprivation of all the rights of ownership." (Citation omitted.) *McKee v. Akron* (1964), 176 Ohio St. 282 at 285, 27 O.O.2d 197, 199 N.E.2d 592.

{¶ 26} In this case, the back of the two-story fire station is only 27 feet from the back corner of plaintiff's land. A five-foot-wide walkway adjacent to the back of the building reduces the buffer zone even further and ensures regular foot traffic behind plaintiff's home. A catch basin is directly adjacent to plaintiff's garage; grading for this catch basin actually started on plaintiff's property. Ponding of water in the catch basin allows insects to breed in close proximity to plaintiff's home. In addition, Ramsey Road, upon which plaintiff's home fronts, was converted into a cul-de-sac on the land adjacent to plaintiff's property and the catch basin. While it might be arguable whether any of these projects alone constituted a taking, together they amount to a substantial deprivation of plaintiff's right to enjoyment of her property, for which she should be compensated.

{¶ 27} Therefore, I dissent.