CLEVELAND HOUSING RENEWAL PROJECT, INC., Appellee,

v.

WELLS FARGO BANK, N.A., et al., Appellants.

[Cite as *Cleveland Hous. Renewal Project, Inc. v. Wells Fargo Bank, N.A.*, 188 Ohio App.3d 36, 2010-Ohio-2351.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93502.

Decided May 27, 2010.

Van Deusen & Wagner, L.L.C., Thomas C. Wagner, and Roger W. Van Deusen; and Cleveland Marshall College of Law, Urban Development Law Clinic, and Kermit J. Lind, for appellee.

Robert J. Triozzi, Cleveland Director of Law, and Michael F. Cosgrove, Assistant Director of Law, for defendant the city of Cleveland.

Thompson Hine L.L.P., Dale S. Smith, Scott A. King, and Terry W. Posey Jr., for appellant Wells Fargo Bank, N.A.

---

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} Defendant-appellant, Wells Fargo Bank, N.A. ("Wells Fargo"), appeals the trial court's imposition of a preliminary injunction. Based on our review of the record and pertinent case law, we reverse and remand.

{¶ 2} On December 15, 2008, plaintiff-appellee, Cleveland Housing Renewal Project ("CHRP"), filed a complaint in the Cleveland Municipal Court, Division of Housing, against Wells Fargo and the city of Cleveland ("Cleveland").[1] The complaint alleged that Wells Fargo held title to over 200 properties in Cleveland, the vast majority of which were purchased as a result of foreclosure proceedings and sheriff sales. The complaint further alleged that many of these properties were vacant and unsecured, resulting in the properties being vandalized and

---

1. The city of Cleveland is not a part of this appeal.

stripped of any value they had before foreclosure. The complaint specifically targeted 11 vacant properties located in Cleveland neighborhoods such as Slavic Village, Detroit Shoreway, Buckeye–Woodland, and Fairfax. CHRP asked the court to declare the properties a public nuisance ("the first claim") and sought an order that the nuisances be abated ("the second claim").

{¶ 3} CHRP also sought to enjoin Wells Fargo's business practices of purchasing property at foreclosure sales and then selling them without ensuring that the houses were in compliance with Cleveland's housing and building codes ("the third claim"). CHRP sought: (1) an order that Wells Fargo identify and inventory all properties it currently owns in Cleveland, (2) an order prohibiting Wells Fargo from taking any legal action affecting the title to the properties, (3) a permanent injunction enjoining Wells Fargo from maintaining the properties in a condition that constitutes a public nuisance, (4) a permanent injunction enjoining Wells Fargo from conducting its business practices in a manner that constitutes a public nuisance, (5) an order that Wells Fargo abate the public nuisance in accordance with R.C. 3767.41(A)(3), and (6) an order that Wells Fargo abate its business practices by complying with the Cleveland housing health and safety codes.

{¶ 4} CHRP also filed a motion for a temporary restraining order and preliminary injunction asking the trial court to prohibit Wells Fargo from conveying any interest in the 11 properties during the pendency of the suit. The trial judge granted the temporary restraining order ("TRO") and ordered CHRP to post a security bond in the amount of $11,000.[2]

{¶ 5} On December 29, 2008, Wells Fargo filed a notice that it removed the action to federal court pursuant to 28 U.S.C. 1332, 1441, and 1446. The federal court remanded the matter to the municipal court in a memorandum and order that stated, "[B]ecause Wells Fargo has failed to meet its burden of showing that CHRP has federal standing, considerable doubt as to this court's subject-matter jurisdiction exists. Because all doubts regarding the appropriateness of removal are to be resolved in favor of remand, this court must remand this case."

{¶ 6} On February 4, 2009, Wells Fargo filed a motion for partial judgment on the pleadings, asking the court to dismiss CHRP's third claim. Wells Fargo argued that R.C. 3767.41 does not permit the abatement of a business practice because it only applies to "buildings," and CHRP had no standing to assert a common-law claim for public nuisance because it had not suffered an injury different in kind from that suffered by the general public.

---

2. The TRO's expiration date was extended numerous times; therefore, it did not expire until the housing court issued the preliminary injunction at issue.

{¶ 7} On May 8, 2009, CHRP filed a motion asking the court to expand the TRO to cover all of the properties owned by Wells Fargo in Cleveland and to cover any new properties entering Wells Fargo's inventory in the future.

{¶ 8} On May 19, 2009, the trial court responded to Wells Fargo's motion for judgment on the pleadings. The court held that CHRP's third claim was a common-law claim for abatement of a public nuisance rather than a claim based on R.C. 3767.41. Relying on this analysis, the court denied Wells Fargo's motion. The court also held that CHRP did have standing to bring a public-nuisance action against Wells Fargo. In making this determination, the trial court noted that CHRP is a nonprofit corporation with a goal of improving housing conditions in Cleveland. The court said that it "could reasonably infer that some aspect of [CHRP]'s business goals has been frustrated by the actions allegedly taken by the defendant Wells Fargo. This puts CHRP in the position of both having suffered a public nuisance that is different in kind than that suffered by other members of the public also affected by Wells Fargo's actions."

{¶ 9} On May 21, 2009, the trial court extended the TRO to include all properties currently owned by Wells Fargo in the city of Cleveland. The court also held that Wells Fargo was not to transfer its interest in any of the properties it currently owned or subsequently acquired "unless that property can be shown to be fully compliant with City code." The court also ordered CHRP to post an additional security bond of $8,000.

{¶ 10} On May 27, 2009, Wells Fargo filed a motion to vacate the TRO. Wells Fargo argued that R.C. 1901.181 is the statute that governs the housing court's subject-matter jurisdiction and does not include common-law public-nuisance claims. Wells Fargo argued that although R.C. 1901.181 does include public-nuisance claims pursuant to R.C. 3767.41(B)(1), the court had previously ruled that CHRP's third claim must proceed on a common-law public-nuisance theory. Wells Fargo relied on this analysis to argue that the trial court did not have subject-matter jurisdiction and was thus required to vacate the TRO. In denying this motion, the court held that because CHRP's first two claims were properly before the court pursuant to R.C. 3767.41, the housing court had jurisdiction to hear and determine all of the parties' claims pursuant to R.C. 1901.131.

{¶ 11} Preliminary-injunction hearings were held on May 28 and 29 and June 5, 2009. On June 18, the trial court issued a preliminary injunction relating to all residential property in Cleveland that is held in the name of Wells Fargo. The injunction requires Wells Fargo to file with the court a list, which must be updated every 14 days, of all properties it owns in Cleveland.[3] The injunction

---

3. The judgment entry stated, "The list shall include the street address, permanent parcel number, date of acquisition, whether the property is boarded, whether a notice of violation

sets forth different requirements depending on the current status of the property, but it requires Wells Fargo to bring all properties up to minimum code standards, which could include demolition, within a certain time period.[4]   In addition, Wells Fargo is not permitted to sell any property in Cleveland for less than $40,000 without prior approval of the trial court.   Wells Fargo filed a timely notice of appeal from the trial court's imposition of the preliminary injunction.

## Law and Analysis

{¶ 12} Wells Fargo presents one assignment of error for our review, wherein it argues that the trial court erred in issuing the preliminary injunction.

## I.   Final, Appealable Order

{¶ 13} Before reaching the merits of Wells Fargo's argument, we must first determine whether there is a final, appealable order in this case.   CHRP filed a motion to dismiss, arguing that a preliminary injunction is ordinarily not a final, appealable order and the preliminary injunction in this case does not fall within R.C. 2505.02(B)(4) to warrant this order being considered final and appealable.   In contrast, Wells Fargo argues that it would not be afforded an effective or meaningful remedy by a direct appeal following a final judgment, and thus the preliminary injunction constitutes a final, appealable order.   We agree.

{¶ 14} Absent a final order, an appellate court may not hear an appeal. Section 3(B)(2), Article IV, Ohio Constitution.   R.C. 2505.02 sets forth six appealable orders, only one of which pertains to a provisional remedy.   The grant or denial of a provisional remedy is a final, appealable order when "both of the following apply:

{¶ 15} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

{¶ 16} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."   R.C. 2505.02(B)(4).[5]

---

has been issued, whether a condemnation notice has been issued, and whether such notices have been closed out by the City indicating the conditions have been corrected."

**4.**   The specific time period provided for such repairs depends on the status of the property. The judgment entry then provides that "[f]or properties which fall into more than one of the categories described above, and which categories have conflicting time periods for repair, demolition, or other action, the shortest time period shall apply."

**5.**   A preliminary injunction is expressly included in the definition of a provisional remedy. R.C. 2505.02(A)(3).

{¶ 17} Thus, in order for the preliminary injunction in this case to be considered a final, appealable order, it must fall within the confines of R.C. 2505.02(B)(4). See also *Sinnott v. Aqua–Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, ¶ 16, citing *State v. Muncie* (2001), 91 Ohio St.3d 440, 446, 746 N.E.2d 1092.

{¶ 18} The parties agree that R.C. 2505.02(B)(4)(a) is met, so we are left only to determine whether Wells Fargo would be afforded a meaningful or effective remedy by an appeal following a final determination in this case. CHRP argues that Wells Fargo would be provided a meaningful and effective remedy by a direct appeal and points to the bond that was posted after imposition of the TRO and preliminary injunction. Wells Fargo argues that the preliminary injunction would require it to expend a substantial sum of money to repair or demolish the properties it owns in Cleveland, and neither the bond nor a direct appeal could effectively remedy such a situation. Wells Fargo also argues that even after expending such a large amount of money, it would be unlikely to recover its investment since properties such as those at issue are selling at very low prices. Wells Fargo finally argues that the preliminary injunction's mandates would require it to violate federal regulations with respect to these properties. Wells Fargo specifically argues that it services loans that are guaranteed by various federal agencies, which require the properties to be transferred without repair. We find these arguments persuasive.

{¶ 19} In considering the requirement that the appealing party would not be afforded a meaningful remedy by appealing a final judgment, the Ohio Supreme Court has "noted that there are times when 'a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment.' * * * In so holding, [they] recognized that '[i]n some instances, "[t]he proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage" suffered by the appealing party.'" *Sinnott,* 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, at ¶ 23, quoting *Muncie,* 91 Ohio St.3d at 451, 746 N.E.2d 1092, citing *Gibson–Myers & Assoc. v. Pearce* (Oct. 27, 1999), Summit App. No. 19358, 1999 WL 980562.

{¶ 20} Similar to Wells Fargo, the appealing party in *Sinnott* argued that the trial court's order would require them to spend funds that would not be recovered if they ultimately prevailed on the merits. Id. at ¶ 24. The court was persuaded by this argument and held that "[w]aiting until the end of litigation before allowing appeal of this provisional order does not provide the remedy of restoring funds that might have been used otherwise. Such an appeal would be neither meaningful nor effective, even if the appellants prevail on the merits of the case." Id. at ¶ 25.

{¶ 21} In order to comply with the mandates of the preliminary injunction, Wells Fargo would be required to expend a substantial amount of money. According to Wells Fargo, financial prudence would require it to demolish the homes, which would cost approximately $10,000 per property. Since Wells Fargo currently owns 180 homes in Cleveland, this could result in Wells Fargo expending $1.8 million in order to comply with the trial court's order. We recognize that Wells Fargo could forego demolition and make the necessary repairs, but there is no guarantee that it would recoup its expenses if it then attempted to transfer the properties. We acknowledge that the trial court required CHRP to post bonds when granting the TRO and preliminary injunction, but these bonds amount to less than $20,000 and would not reimburse Wells Fargo for its losses should it prove that the preliminary injunction was improvidently granted.

{¶ 22} CHRP argues that the preliminary injunction merely requires Wells Fargo to do that which it was already required to do—comply with Cleveland's housing and building codes. The trial court acknowledged, however, that "it is not illegal per se to transfer properties that are not in compliance with City code. The Court is mindful of City Council's decision not to enact a point-of-sale ordinance, and is not, through this order, attempting to legislate such a requirement into effect." Since Wells Fargo could lawfully transfer the properties without bringing the properties into compliance with city code, and we see no remedy available in a direct appeal that would effectively and meaningfully compensate Wells Fargo for losses sustained as a result of the preliminary injunction, we find that the provisional remedy in this case does constitute a final, appealable order that is properly before this court.

## II. Trial Court's Authority to Decide a Common–Law Nuisance Claim

{¶ 23} Wells Fargo argues that the housing court lacked authority to decide the merits of CHRP's common-law nuisance claim. Wells Fargo's argument in this respect is twofold. It first argues that the trial court lacked subject-matter jurisdiction because common-law nuisance claims are not within the realm of claims a housing court is authorized to hear pursuant to R.C. Chapter 1901. The second prong of Wells Fargo's argument is that the trial court erroneously determined that CHRP had standing to bring a common-law nuisance claim.

### A. Subject–Matter Jurisdiction

{¶ 24} Wells Fargo first claims that the housing court lacked subject-matter jurisdiction to decide the merits of CHRP's common-law public-nuisance claim. It argues that the breadth of the housing court's jurisdiction is specifically defined in R.C. 1901.18(A)(10) and 1901.181(A)(1) and does not include common-law public-nuisance claims. CHRP recognizes that the housing court would ordinarily lack jurisdiction to decide a common-law public-nuisance claim, but

argues that because the housing court had jurisdiction to decide its claims based upon R.C. 3767.41, it also had incidental jurisdiction to determine CHRP's common-law public-nuisance claim.

{¶ 25} It is well established that municipal courts are courts of limited jurisdiction, and their jurisdictional limitations are set by statute. R.C. 1901.011 created the Cleveland Municipal Court's housing division, and R.C. 1901.181 established what causes of action are exclusively reserved for the housing court. Pursuant to statute, four types of actions are reserved exclusively to the housing courts. R.C. 1901.181(A)(1). These actions are: (1) "any civil action to enforce any local building, housing, air pollution, sanitation, health, fire, zoning, or safety code, ordinance, or regulation applicable to premises used or intended for use as a place of human habitation, buildings, structures, or any other real property subject to any such code, ordinance, or regulation," (2) "any civil action commenced pursuant to Chapter 1923. or 5321. or sections 5303.03 to 5303.07 of the Revised Code[,]" (3) "any criminal action for a violation of any local building, housing, air pollution, sanitation, health, fire, zoning, or safety code, ordinance, or regulation applicable to premises used or intended for use as a place of human habitation, buildings, structures, or any other real property subject to any such code, ordinance, or regulation[,]" and (4) "any civil action as described in division (B)(1) of section 3767.41 of the Revised Code that relates to a public nuisance."

{¶ 26} The parties do not dispute that CHRP's first two claims were public-nuisance claims commenced pursuant to R.C. 3767.41 and were properly within the exclusive jurisdiction of the housing court. The parties disagree on whether R.C. 1901.131, which establishes the housing court's incidental jurisdiction, provides the housing court with subject-matter jurisdiction over CHRP's common-law public-nuisance action.[6]

{¶ 27} Wells Fargo relies on *State ex rel. Herring v. Greater Unity Baptist Church,* Lucas App. No. L–01–1345, 2002-Ohio-4944, 2002 WL 31108677, to argue that the housing court lacked subject-matter jurisdiction. This reliance is misguided. *Herring* involved a nuisance action brought in the Toledo Municipal Court's housing division pursuant to R.C. 3767.03. Id. at ¶ 6. The court held that the housing court lacked subject-matter jurisdiction because R.C. 3767.03

---

**6.** R.C.1901.131 provides that "[w]henever an action or proceeding is properly brought in the housing * * * court, the division has jurisdiction to determine, preserve, and enforce all rights involved in the action or proceeding, to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties, including, but not limited to, the granting of temporary restraining orders and temporary and permanent injunctions, to render personal judgment irrespective of amount in favor of any party, and to render any judgments and make any findings and orders in the same manner and to the same extent that the court of common pleas can render a judgment or make a finding or order in a similar action or proceeding."

provided that claims pursuant to that statute must be brought in the common pleas court. Id. The court noted that although the housing court would have had jurisdiction to hear such a claim pursuant to the Toledo Municipal Code, the trial court's judgment entry failed to mention that code section and relied solely upon R.C. 3767.03. Id. The court then held, "Since this case proceeded under R.C. 3767.03, we find that the municipal court lacked jurisdiction to determine the issues. Its judgment was therefore a nullity." Id. at ¶ 8.

{¶ 28} In *Herring,* the housing court was presented with only one cause of action that was unequivocally reserved to the jurisdiction of the common pleas court. In this case, however, the trial court was presented with three separate claims, two of which fall squarely within the exclusive jurisdiction of the housing court. Although CHRP's third claim was outside the exclusive jurisdiction of the housing division, it was properly within the jurisdictional limits of the municipal court. See R.C. 1901.18 (granting municipal courts jurisdiction "[i]n any civil action, of whatever nature or remedy, of which judges of county courts have jurisdiction" so long as the action falls within the monetary jurisdiction of municipal courts). Pursuant to R.C. 1901.131 then, the housing court had incidental jurisdiction to "determine, preserve, and enforce all rights involved in the action or proceeding." See also *State ex rel. J.K. & E. Auto Wrecking v. Trumbo* (1992), 64 Ohio St.3d 73, 75, 591 N.E.2d 1238 (holding that since the housing court had jurisdiction to determine a forcible-entry-and-detainer action, it could properly determine trespass action pursuant to R.C. 1901.131); *Hallmark Mgt. v. Tartt* (May 23, 1985), Cuyahoga App. No. 49014, 1985 WL 9036 ("The housing court which heard this case has exclusive jurisdiction for such actions. R.C. 1901.181. That court has incidental jurisdiction to determine all [rights] which the parties assert by their claims, counterclaims, cross-claims, or third party claims. R.C. 1901.131"). Id. at *4.

{¶ 29} Because CHRP's first two claims fall within the exclusive jurisdiction of the housing court, and the third claim meets the jurisdictional limitations of the municipal court, we find that the housing court had incidental jurisdiction to determine the merits of CHRP's common-law public-nuisance action.

## B. Standing

{¶ 30} Wells Fargo next argues that CHRP has not suffered an injury different in kind from that suffered by the general public, and thus CHRP lacks standing to pursue a common-law public-nuisance claim. CHRP argues that Wells Fargo's business practice of maintaining and transferring properties without complying with the city codes frustrates CHRP's corporate purpose, which is an injury that is different in kind from that suffered by the general public.

**46**

{¶ 31} The general rule is that a private individual lacks standing to pursue a public nuisance. *Miller v. W. Carrollton* (1993), 91 Ohio App.3d 291, 295, 632 N.E.2d 582. A private individual can fall within the exception to this general rule if he is able to show that he suffered an injury or damage that was not incurred by the general public. Id. "[T]he majority view regards the special injury as an injury suffered by the plaintiff which is different in kind rather than degree from that suffered by other members of the public exercising the same public right." *Miller* at 295–296, 632 N.E.2d 582. See also *Coticchia v. Bay Village* (July 16, 1998), Cuyahoga App. No. 73658, 1998 WL 398213; *Bigler v. Ohio Valley Coal Co.* (Aug. 6, 1992), Cuyahoga App. No. 60848, 1992 WL 189550.

{¶ 32} It is undisputed that the general public has an interest in ensuring that properties are maintained in a safe and habitable condition. Although CHRP, as a private citizen, shares this interest, more is required for CHRP to have standing to pursue a common-law public-nuisance action against Wells Fargo. A review of the federal court record in this case is dispositive on this issue.

{¶ 33} In its memorandum in support of its motion to remand, CHRP argued to the federal court that "CHRP, as a non-profit community development corporation, does not claim to have a *direct injury in fact* under federal (Article III) standing principles. Nor does Plaintiff CHRP meet the causation and redressibility requirements that are part of the constitutional core of Article III standing. The injury suffered by Plaintiff CHRP *is not distinct from the injury to the public at large.*" (Emphasis added.) The federal court relied on CHRP's argument that it suffered no personal injury in remanding this matter to the housing court.

{¶ 34} Pursuant to the doctrine of judicial estoppel, a litigant cannot successfully argue a position in one court and then take a contrary position in another court. *New Destiny Treatment Ctr., Inc. v. Wheeler,* Summit App. No. 24404, 2009-Ohio-6956, 2009 WL 5174083, ¶ 27. " 'Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.' " Id., quoting *Teledyne Indus., Inc. v. Natl. Labor Relations Bd.* (C.A.6, 1990), 911 F.2d 1214, 1218. In order for judicial estoppel to apply in this matter, CHRP must have taken a contrary position under oath in a prior proceeding, and that position must have been accepted by the court. *State v. Cleveland,* Lorain App. No. 08CA009406, 2009-Ohio-397, 2009 WL 224505, ¶ 17, quoting *Greer–Burger v. Temesi,* 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25. See also *Wloszek v. Weston, Hurd, Fallon, Paisley & Howley, L.L.P.,* Cuyahoga App. No. 82412, 2004-Ohio-146, 2004 WL 64947, ¶ 27 ("The doctrine of judicial estoppel

forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding").

{¶ 35} The elements of judicial estoppel are met in this case. CHRP unequivocally argued in federal court that it lacked standing to pursue a nuisance action, other than one based on R.C. 3767.41, because it did not suffer an injury distinct from that suffered by the general public. The federal court relied on this argument when remanding the case to the housing court. CHRP is therefore judicially estopped from arguing that it has standing to pursue a common-law public-nuisance action.

### Conclusion

{¶ 36} Although there was a final, appealable order in this case, and the housing court had subject-matter jurisdiction to hear CHRP's common-law public-nuisance claim, the preliminary injunction granted with respect to this claim was improvidently granted. The housing court issued a preliminary injunction based solely on CHRP's common-law public-nuisance claim after CHRP had successfully argued in federal court that standing was lacking to pursue such a claim. As such, CHRP is judicially estopped from arguing that it has standing to pursue a common-law public-nuisance claim, and the trial court abused its discretion in granting the preliminary injunction.

{¶ 37} This judgment is reversed, and the cause is remanded to the lower court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BOYLE, P.J., concurs.

COONEY, J., concurs in judgment only.