[Cite as *Sommer v. Ohio Dept. of Transp.*, 2014-Ohio-5663.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nick Sommer et al., | : | |
| Plaintiffs-Appellants, | : | No. 13AP-848 |
| | | (Ct. of Cl. No. 2012-04715) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Transportation, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 23, 2014

*Seeley, Savidge, Ebert & Gourash, Co., LPA, Gary A. Ebert, Thomas Haren, Jazmyn Stover*, and *Andrew D. Bemer*, for appellants.

*Michael DeWine*, Attorney General, and *Velda K. Hofacker*, for appellee.

APPEAL from the Court of Claims of Ohio

BROWN, J.

{¶ 1} This is an appeal by plaintiffs-appellants, Nick Sommer and Alyssa Birge, from an entry of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Ohio Department of Transportation ("ODOT"), on appellants' claims for inverse condemnation and nuisance arising out of a bridge construction project undertaken by ODOT.

{¶ 2} The following background facts regarding ODOT's bridge construction project, which are essentially not in dispute, are taken primarily from the affidavit of David Lastovka, ODOT's project manager for the "Cleveland Innerbelt Project" (hereafter "the bridge project"). In 2007, appellants purchased a home in the Tremont neighborhood of Cleveland, located at 1107 University Road. In 2010, ODOT began

construction of the bridge project to replace the existing "Innerbelt Central Viaduct truss bridge." (Lastovka Affidavit, ¶ 4.)

{¶ 3} The first phase of the bridge project involved "the Walworth Run Sewer Realignment Project" ("the sewer realignment project"), which began in September 2010 and was completed in July 2011. (Lastovka Affidavit, ¶ 5.) ODOT coordinated with the Northeast Ohio Regional Sewer District ("NEORSD") to relocate a section of the "Walworth Run sanitary inceptor sewer that was in conflict with the Innerbelt bridge project." (Lastovka Affidavit, ¶ 5.) NEORSD managed the work, "and contracted directly with a contractor to complete that project." (Lastovka Affidavit, ¶ 5.) The sewer realignment project required construction around appellants' home, resulting in "construction noise," and requiring lanes of traffic around appellants' home to be closed. (Lastovka Affidavit, ¶ 5.)

{¶ 4} The construction of new west-bound lanes of the bridge project "required the driving of steel beams, called piles, down 180-200 feet to bedrock" to support the new bridge. (Lastovka Affidavit, ¶ 6.) The pounding of piles into the ground "creates a loud banging sound." (Lastovka Affidavit, ¶ 6.) The construction of the west-bound bridge is set to conclude in 2014. The design and construction of the bridge project will cost $293 million.

{¶ 5} On June 12, 2012, appellants filed a complaint against ODOT, alleging that the work on the bridge project resulted in "extreme noise, pounding and vibrations * * * separate and distinct from that experienced by other affected properties," and causing appellants' home to be uninhabitable. The complaint alleged causes of action for inverse condemnation, as well as public and private nuisance.

{¶ 6} On July 9, 2013, ODOT filed a motion for summary judgment. On July 26, 2013, appellants filed a memorandum contra ODOT's motion for summary judgment. On August 30, 2013, the Court of Claims filed an entry granting ODOT's motion for summary judgment.

{¶ 7} On appeal, appellants set forth the following four assignments of error for this court's review:

> I. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE ON PLAINTIFF-APPELLANTS' TAKINGS CLAIM AFTER APPLYING INCORRECT LEGAL STANDARDS WHEN ANALYZING THE CLAIM.

II. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE ON PLAINTIFF-APPELLANTS' TAKINGS CLAIM BECAUSE GENUINE ISSUES OF FACT REMAIN REGADING WHETHER PLAINTIFF-APPELLANTS' INTANGIBLE PROPERTY INTERESTS WERE TAKEN BY THE GOVERNMENT WITHOUT JUST COMPENSATION.

III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE ON PLAINTIFF-APPELLANTS' NUISANCE CLAIM BECAUSE GENUINE ISSUES OF MATERIAL FACT REMAIN REGARDING WHETHER THE HARM SUFFERED BY PLAINTIFF-APPELLANTS WAS DIFFERENT IN KIND THAN THAT EXPERIENCED BY NEIGHBORING HOME OWNERS.

IV. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF-APPELLANTS' NUISANCE CLAIM BECAUSE THE NUISANCE CLAIM IS NOT BARRED BY THE DOCTRINE OF DISCRETIONARY IMMUNITY.

{¶ 8} Appellants' first and second assignments of error are interrelated and will be considered together. Under these assignments of error, appellants contend the Court of Claims erred (1) in failing to examine their inverse condemnation (takings) claim under the proper legal standard, and (2) by granting summary judgment in favor of ODOT on their takings claim.

{¶ 9} Pursuant to Civ.R. 56(C), a trial court shall grant summary judgment if the filings in the action, including the pleadings and affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This court's review of a trial court's decision on summary judgment is de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

{¶ 10} We initially address appellants' contention that the Court of Claims erred in failing to analyze their takings claim under the three-part test for regulatory takings as set forth in *Penn Cent. Transp. Co. v. New York,* 438 U.S. 104, 124 (1978). Under this test, "[w]here a regulation places limitations on land that falls short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex list of factors including [1] the regulation's economic effect on the landowner, [2] the extent to which the regulation interferes with reasonable investment-backed

expectations, and [3] the character of the government action." *Palazzolo v. Rhode Island,* 533 U.S. 606, 617 (2001), citing *Penn Cent.* at 124. Appellants cite a decision of the Sixth District Court of Appeals, *Boice v. Ottawa Hills,* 6th Dist. No. L-06-1208, 2007-Ohio-4471, ¶ 35, for the proposition that it is error for a trial court to grant summary judgment on a takings claim without evaluating the case in light of the *Penn Cent.* factors.

{¶ 11} In response, ODOT argues that appellants raise for the first time on appeal the contention that the Court of Claims employed the wrong standard. ODOT contends that, unlike the decisions in *Penn Cent.* and *Boice,*[1] relied on by appellants, the instant case does not involve a regulatory takings claim, nor did appellants argue before the Court of Claims that it should apply the *Penn Cent.* standard for regulatory takings.

{¶ 12} A claim "for inverse condemnation * * * is 'a cause of action against the government to recover the value of property taken by the government without formal exercise of the power of eminent domain.' " *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 62, quoting *Moden v. United States*, 404 F.3d 1335, 1342 (2005). A "taking" is " '[a]ny direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it * * * for which he is guaranteed a right of compensation by section 19 [Article I of the Ohio Constitution].' " *Id.* at ¶ 59, quoting *Norwood v. Sheen,* 126 Ohio St. 482 (1933), paragraph one of the syllabus.

{¶ 13} Under Ohio law, "a 'taking' may occur even where the state has not physically dispossessed the owner." *Hurst v. N. Seventh Street Church of Christ of Hamilton, Ohio,* 12th Dist. No. CA90-10-204 (July 1, 1991). Rather, "[c]ertain acts by the state which substantially interfere with the elemental rights growing out of ownership of the private property constitute a 'taking' within the meaning of the Ohio Constitution." *Id.*, citing *Smith v. Erie RR. Co.,* 134 Ohio St. 135 (1938.) Thus, a governmental taking involves a "substantial interference with the owner's property rights." *Id.* In the absence of a showing of physical displacement, a plaintiff "might recover by showing that the damage was directed at his particular property * * * or by showing that the damage was so extreme as to amount to a substantial deprivation of all the rights of ownership." *McKee*

---

[1] In *Boice,* the appellants alleged that the retroactive application of a zoning amendment to their property constituted a regulatory taking. The appellate court in *Boice* held that the trial court erred in finding no taking had occurred in the appellees' enforcement of its zoning ordinance and the denial of the appellants' variance request without first evaluating the case under the standards set forth in *Penn Cent.*

*v. Akron,* 176 Ohio St. 282, 285 (1964), *overruled on other grounds, Haverlack v. Portage Homes, Inc.,* 2 Ohio St.3d 26 (1982). However, the mere fact that the "property is rendered less desirable as a result of the governmental activity does not in and of itself constitute a taking so as to entitle the owner thereof to compensation." *Id.*

{¶ 14} As noted, appellants argue that the Court of Claims should have analyzed their takings claim under the test for regulatory takings as set forth in *Penn Cent.* However, on review of the summary judgment filings, we agree with ODOT that appellants did not raise this issue before the Court of Claims. Specifically, appellants' response to ODOT's motion for summary judgment contains no citation to either *Penn Cent.* or to its three-part test for evaluating a regulatory takings claim. In general, if "the nonmoving party fails to raise an issue when responding to the moving party's motion for summary judgment, the nonmoving party has waived that issue on appeal." *Great Lakes Window, Inc. v. Resash, Inc.,* 11th Dist. No. 2006-T-0114, 2007-Ohio-5378, ¶ 24.

{¶ 15} We note that, in their brief in opposition to ODOT's motion for summary judgment, appellants argued before the Court of Claims that ODOT had "substantially and materially" interfered with the use of their property, including "physical trespasses" onto their property. Further, appellants' brief cited *Norwood* in support of their argument that: "In a proper case, damages may be awarded for the temporary taking of a property for public use, where the land is encroached upon and the owner's dominion and control are restricted for a period of time."

{¶ 16} The Court of Claims, in addressing appellants' inverse condemnation claim, applied the general principles argued by appellants in their response to the motion for summary judgment. Specifically, the Court of Claims analyzed appellants' takings claim under *State ex rel. Fejes v. Akron,* 5 Ohio St.2d 47, 49 (1966), in which the Supreme Court of Ohio held: "As ordinarily understood, the term, 'taking,' as used in the Constitution, comprehends '[a]ny direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it.' " Here, on review of the claims and arguments presented to the Court of Claims, we find no error by the court in failing to analyze appellants' takings claim in terms of the *Penn Cent.* factors for evaluating a regulatory takings claim.

{¶ 17} We therefore turn to the merits of appellants' argument that the Court of Claims erred in granting summary judgment in favor of ODOT as to the inverse

condemnation claim. Appellants contend that the Court of Claims erroneously interpreted Ohio law to require a physical invasion of their property or a total denial of access, and that genuine issues of material fact remain as to whether ODOT substantially interfered with appellants' use and enjoyment of their property.

{¶ 18} The evidence before the Court of Claims on summary judgment included the deposition testimony of both appellant Alyssa Birge (individually "appellant Birge") and appellant Nick Sommer (individually "appellant Sommer"). In her deposition, appellant Birge stated: "[B]asically, we live in a construction zone." (Birge Depo. 33.) She noted that, following completion of the sewer realignment project, ODOT began caisson pounding and digging trenches to reroute pipes and electrical ducts. Appellant Birge cited instances of "drilling noise, * * * sawing noise, [and] trucks idling." (Birge Depo. 34.) She also described "vibrations of our house, * * * filth and dirt swirling around." (Birge Depo. 35.) During the bridge project, construction workers tore down a nearby cold storage building; appellant Birge subsequently noticed "there was tons of more wildlife near our property; birds, groundhogs, rats, mice, cats, feral cats." (Birge Depo. 29.) According to appellant Birge, the construction activity restricted her family's ability to use their backyard and to open windows during the summer months. She also noted that traffic had been re-routed near her house. Appellants, in their brief in response to ODOT's motion for summary judgment, attached as exhibits photographs taken by appellant Birge depicting construction related activities.

{¶ 19} In his deposition, appellant Sommer described the construction as "annoying." (Sommer Depo. 24.) He stated that the construction "prohibits you from relaxing completely." (Sommer Depo. 22.) He noted "there's a dirtiness and a noisiness about it," including dirt being dragged into the house. (Sommer Depo. 22.) According to appellant Sommer, the construction had not caused any physical injuries; rather, he stated: "I guess mentally, just kind of the wear and tear on the mind." (Sommer Depo. 35.)

{¶ 20} In addressing appellants' inverse condemnation claim, the Court of Claims observed that, despite appellants' contention that the construction project had caused great inconvenience, appellants "acknowledge that they have not been denied access to their property." The Court of Claims further found no evidence to show appellants'

"dominion and control over their property has been excluded or restricted," and, thus, the court held that appellants' inverse condemnation claim "must fail as a matter of law."

{¶ 21} In the instant case, appellants do not claim a physical taking of their property.  As indicated in their deposition testimony, appellants allege that the construction project has resulted in noise, dust, vibrations, and re-routing of traffic near their home.  Ohio courts, however, have held that "many intangible interferences with property do not constitute a taking."  *State ex rel. Reich v. Beachwood,* 158 Ohio App.3d 588, 2004-Ohio-5733, ¶ 14 (8th Dist.)  Thus, it has been held that "an increase in vibration and dust caused by a highway improvement, both from the construction and from the increase in traffic from the expanded highway, is not compensable as a taking." *Id.*, citing *In re Leas,* 5 Ohio App.3d 120 (7th Dist.1981).  Further, courts have held that "odor from a sewage treatment plant is not a taking, despite the fact that the odor prevented the property owner from using some of his land for recreational purposes."  *Id.* at ¶ 14, citing *McKee.*  Courts have also held that claims alleging "a change in livability and privacy" do "not constitute a taking."  *Id.* at ¶ 18.

{¶ 22} In *Fejes,* the plaintiff brought a takings action alleging that demolition and construction work by a municipality, which caused severe tremors and vibrations through the soil, had damaged her property.  While the Supreme Court acknowledged a prior decision in which it found a taking "when airplanes fly so low over a landowner's property that they 'constitute a direct and immediate interference with the enjoyment and use thereof[,]' * * * [t]he *Fejes* court declined * * * to 'extend the doctrine and implications of that case beyond its particular facts' to include damages to the landowner's property from vibrations from construction."  *Reich* at ¶ 13, quoting *Fejes* at 52.  Rather, the court in *Fejes* determined that the plaintiff's allegations failed to show a taking, but, instead, "only consequential damage thereto by the construction work."  *Id.* at 52.

{¶ 23} Courts in other jurisdictions have similarly held that inconveniences such as noise, dust, and vibrations arising out of government construction projects are not generally compensable in a takings action.  *See Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Regional Transit Auth.,* 610 F.Supp.2d 1288, 1306 (D.C.W.D.Wash.2009) (dismissing plaintiffs' takings claim based on alleged denial of their right to quiet enjoyment; plaintiffs failed to demonstrate how construction project produced noise, vibrations, and dust beyond that typical to any major downtown

construction project); *Lombardy v. Peter Kiewit Sons' Co.,* 266 Cal. App.2d 599, 603 (1968), *overruled on other grounds, Southern California Edison Co. v. Bourgerie,* 9 Cal.3d 169 (1973) (noting, in inverse condemnation action, that "[t]he mental, physical and emotional distress allegedly suffered by plaintiffs by reason of the fumes, noise, dust, shocks and vibrations incident to the construction and operation of the freeway does not constitute the deprivation of or damage to the property or property rights of plaintiffs for which they are entitled to be compensated").

{¶ 24} In the instant case, while expressing frustration with the noise, dirt, and other annoyances, appellant Birge was not aware of any physical damage or harm to her property as a result of the construction work. Similarly, appellant Sommer was unaware of any structural damage to the house. Appellant Birge assumed, once the construction was completed, she would be able to enjoy her property the same as she did prior to the work. Appellant Sommer, while agreeing that the bridge construction work "needs to be done," believed that ODOT "could have come to us and maybe let us know what was going on and give us maybe fair warning." (Sommer Depo. 27.)

{¶ 25} Upon review, the evidence submitted by appellants on summary judgment does not create a genuine issue of material fact as to whether the actions of ODOT constituted a substantial interference with appellants' dominion and control of their property giving rise to a compensable takings claim. Here, the evidence does not permit an inference that ODOT "directly encroached upon" their property, or "excluded them from dominion over" it. *Dudash v. Nelsonville,* 4th Dist. No. 1110 (Aug. 26, 1982). Further, the evidence does not indicate government activity "directed solely at the property," nor does it show damage "so severe as to amount to complete and substantial interference with the peaceful use and enjoyment of such property." *State ex rel. Pharmed Corp. v. Smith,* 1oth Dist. No. 88AP-39 (June 30, 1988) (construction of highway overpass was not an encroachment on relator's property and not compensable as a taking). *See also State ex rel. Pitz v. Columbus,* 56 Ohio App.3d 37, 42 (10th Dist.1988) (inconvenience to plaintiff caused by government activity did not result in a taking where "there was no substantial interference with his dominion and control of the property, no denial of access or the right to continue a prior use of his property, and no dispossession at all").

{¶ 26} Further, appellants have not shown "a substantial, material and unreasonable interference with the physical access to or from the property." *Akron-Selle Co. v. Akron,* 49 Ohio App.2d 128, 130 (9th Dist.1974). While appellant Birge noted that traffic had been re-routed near her home, she acknowledged that access to her residence was "never completely cut off." (Birge Depo. 66.) Under Ohio law, "merely rendering access less convenient or more circuitous does not by itself constitute 'substantial interference.' " *Salvation Army v. Ohio Dept. of Transp.,* 10th Dist. No. 04AP-1162, 2005-Ohio-2640, ¶ 17.

{¶ 27} Based on this court's de novo review, the Court of Claims properly granted summary judgment in favor of ODOT on appellants' claim for inverse condemnation. Accordingly, appellants' first and second assignments of error are without merit and are overruled.

{¶ 28} Appellants' third and fourth assignments of error, both challenging the Court of Claims' grant of summary judgment with respect to their nuisance claim, will be addressed together. Under these assignments of error, appellants contend that (1) a genuine issue of material fact exists regarding whether the harm suffered by appellants was different in kind than that suffered by other property owners, and that (2) their nuisance claims are not barred by the doctrine of discretionary immunity.

{¶ 29} Ohio law defines a public nuisance as "an unreasonable interference with a right common to the public." *Hager v. Waste Technologies Industries,* 7th Dist. No. 2000-CO-45, 2002-Ohio-3466, ¶ 69. In general, "a private individual lacks standing to pursue a public nuisance." *Cleveland Hous. Renewal Project, Inc. v. Wells Fargo Bank,* 188 Ohio App.3d 36, 2010-Ohio-2351, ¶ 31 (8th Dist.), citing *Miller v. W. Carrollton,* 91 Ohio App.3d 291, 295 (2d Dist.1993). However, "[a] private individual can fall within the exception to this general rule if he is able to show that he suffered an injury or damage that was not incurred by the general public. * * * '[T]he majority view regards the special injury as an injury suffered by the plaintiff which is different in kind rather than degree from that suffered by other members of the public exercising the same public right.' " *Id.* at ¶ 31, quoting *Miller* at 295-96.

{¶ 30} In addressing appellants' nuisance claim, the Court of Claims held in part:

> The harm alleged by plaintiffs includes excessive construction noise, related dirt and debris, and a sudden invasion of "wildlife" on their property, including groundhogs, birds, rats,

mice, and feral cats. Plaintiffs acknowledge that the construction project is adjacent to other neighborhood properties, including residences and a restaurant which is situated next door to plaintiffs' home. Plaintiffs have failed to demonstrate how the alleged harm is different in kind from that experienced by the other property owners who live near the construction project.

* * *

In their depositions, plaintiffs concede that there has not been any physical damage either to their residence or to their land; that no construction equipment has come into contact with their property; and that they will be able to use and enjoy their property in the same manner when the construction has ended. Plaintiffs have presented no evidence of conduct on the part of defendant that is not authorized by law. For the foregoing reasons, the only reasonable conclusion to be drawn is that plaintiffs cannot prevail on their nuisance claim.

{¶ 31} Upon review of the record on summary judgment, we agree with the Court of Claims that appellants have failed to establish a claim for public nuisance.[2] As noted, the Court of Claims determined that appellants failed to demonstrate how the harm alleged by appellants was different in kind from that experienced by other property owners.

{¶ 32} In his deposition, appellant Sommer indicated he had not, in general, discussed the construction project with his neighbors; he had, however, spoken with the owners of a restaurant located near his residence. According to appellant Sommer, the owners complained about the "[s]ame things" related to noise, vibrations and dust. (Sommer Depo. 52.) When asked whether his complaints were different, he responded: "Pretty much the same." (Sommer Depo. 52.)

{¶ 33} The evidence on summary judgment also included the affidavit of Lastovka, the project manager for the bridge project. In his affidavit, Lastovka averred in part that, since the beginning of the bridge project, "I have been and continue to be in or around the project on a bi-weekly basis," and "I have personally experienced the noise, dust, and vibrations that occur in the Tremont neighborhood." (Lastovka Affidavit, ¶ 7.) He further averred: "Any person who comes within approximately one-fourth mile of the project will

---

[2] We note appellants have not challenged on appeal the Court of Claims' grant of summary judgment in favor of ODOT with respect to a private nuisance claim.

experience the same noise, vibrations, and restricted access."  (Lastovka Affidavit, ¶ 8.) Lastovka noted there is a restaurant open to the public located next door to appellants' residence that is "even closer to the highway" than appellants' home, and "a whole neighborhood of houses behind and across the street from [appellants' residence]." (Lastovka Affidavit, ¶ 8.)  According to Lastovka, "[t]he noise, dust and vibrations can be heard and felt throughout the Tremont neighborhood."  (Lastovka Affidavit, ¶ 8.)

{¶ 34} Here, the inconveniences experienced by appellants, i.e., noise, dust, and vibrations, are those common to the general public and we agree with the Court of Claims that the evidence on summary judgment does not establish that the harm cited is different in kind to that suffered by others in the neighborhood.  Accordingly, the Court of Claims did not err in granting summary judgment in favor of ODOT on appellants' public nuisance claim.

{¶ 35} Appellants also contend that the Court of Claims erred in holding that their nuisance claim was barred by the doctrine of discretionary immunity.  Appellants argue that the doctrine of discretionary immunity does not grant ODOT the authority to carry out the bridge project in a negligent manner.

{¶ 36} In response, ODOT argues that the Court of Claims did not grant summary judgment based on a determination that ODOT was entitled to discretionary immunity. We agree. In its decision, the Court of Claims noted the general rule that "[c]onduct that is fully authorized by statute or administrative regulation is generally not actionable as a public nuisance."  However, as noted above, the Court of Claims granted summary judgment in favor of ODOT on the nuisance claim based on a determination that appellants "failed to demonstrate how the alleged harm is different in kind from that experienced by the other property owners who live near the construction project."  As also addressed above, the Court of Claims did not err in its determination.  Accordingly, appellants' third and fourth assignments of error are not well-taken and are overruled.

{¶ 37} Based on the foregoing, appellants' four assignments of error are overruled, and the judgment of the Court of Claims of Ohio is hereby affirmed.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____